IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RICHARD SNYDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-00066 GMS |
| | ) | |
| GPM 2, LLC, CHRISTY | ) | |
| MANAGEMENT, LLC, BONNIE | ) | |
| BENSON, P.A., THE FELTON BANK | ) | |
| OF DELAWARE, JAMES P. CONNOR, | ) | |
| JR., UNKNOWN TITLE INSURANCE | ) | |
| COMPANY and SERGOVIC & ELLIS, | ) | |
| P.A., | ) | |
| | ) | |
| Defendants. | ) | |

**OPENING BRIEF OF DEFENDANT BONNIE BENSON, P.A. IN SUPPORT OF
ITS MOTION TO DISMISS**

JEFFREY M. WEINER, ESQUIRE #403
1332 King Street
Wilmington, Delaware 19801
(302) 652-0505
Counsel for Defendant Bonnie Benson, P.A.

DATED:    April 19, 2006

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF CITATIONS                                                          ii

STATEMENT OF THE NATURE AND STAGE OF THE
PROCEEDINGS                                                                  1

SUMMARY OF ARGUMENT                                                          2

STATEMENT OF FACTS                                                           3

ARGUMENT

     I.    THIS COURT LACKS SUBJECT MATTER
           JURISDICTION OVER PLAINTIFF'S CLAIMS            4

     II.   PLAINTIFF SNYDER'S COMPLAINT FAILS TO
           STATE A CLAIM UPON WHICH RELIEF CAN
           BE GRANTED                                     5

CONCLUSION                                                                   7

## TABLE OF CITATIONS

**Case**:                                                                  **Page**

*David B. Lilly Company, Inc. v. Fisher*,
    800 F.Supp. 1203 (D.Del. 1992)
    aff'd in part and rev'd in part
    18 F.3d 1112 (CA 3, 1994)                                        5

*Nichols v. Twilley, Street & Braverman, P.A.*,
    [1991 WL 226777 (D.Del.)]                                        5

*Pinckney v. Tigani*,
    [2004 WL 2827896 (Del.Super.)]                                   5

*Pusey v. Reed*,
    258 A.2d 460 (Del.Super. 1969)                                   5

*Starum v. All Engineering Co.*,
    350 A.2d 765 (Del. 1975)                                         5

*Weaver v. Lukoff*,
    [1986 WL 17121 (Del.)]                                           5

*Woulard v. Kennedy*
    [1985 WL 189249 (Del.Super.)]                                    5

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

On February 2, 2007, Plaintiff Richard Snyder ("Snyder") filed his Complaint. Plaintiff Snyder's Complaint fails to set forth the alleged basis for subject matter jurisdiction before this Court.  As set forth in the Opening Brief of Defendant Christy Management LLC, hereby adopted by reference pursuant to Fed.R.Civ.P. (10)(c), subject matter jurisdiction over this matter does not rest.

On March 30, 2007, Defendant Benson was served with a Summons and copy of the Complaint.

This is Defendant Bonnie Benson, P.A.'s Opening Brief in Support of its Motion to Dismiss.

## SUMMARY OF ARGUMENT

1. This Court lacks subject matter jurisdiction over the claims asserted by Plaintiff Snyder. There is no Federal question involved in this case nor is there a complete diversity of citizenship between Plaintiff Snyder and the Defendants. Accordingly, this action must be dismissed.

2. Plaintiff Snyder's Complaint fails to state a claim upon which relief can be granted. Plaintiff's Complaint alleges that the Property was conveyed by Defendant GPM2 LLC to Defendant Christy Management, LLC commencing on or about December 21, 2006. Plaintiff Snyder's Complaint then asserts that Defendant Bonnie Benson, P.A. "is identified as an attorney having handled the disputed settlement."

## STATEMENT OF FACTS

Plaintiff Snyder alleges that he had a "contract to by (sic) certain real property in Delaware (dated 25 October 2005)" and that he recorded that contract in the land records of Sussex County on August 22, 2006 (Complaint, ¶2, D.I. 1).

The referenced contract was entered into between Plaintiff Snyder, as Buyer, and Defendant GPM2, LLC ("GPM2") as Seller. Section 3.02 of the contract provides that closing shall occur "on or before December 5, 2005" and that "time being of the essence."

Plaintiff Snyder did not record this contract until August 22, 2006, which indicated that closing under the contract did not occur by December 5, 2005.

Plaintiff Snyder's Complaint then alleges that "by documents filed in the same office (Land Records), the property was conveyed by Defendant GPM2, LLC to Defendant Christy Management, L.L.C. with various dates of recording commencing on or about December 21, 2006. Defendant Bonnie Benson, P.A. is identified as an attorney having handled the disputed settlement."

**ARGUMENT**

I.     **THIS COURT LACKS SUBJECT MATTER JURISDICTION**
       **OVER PLAINTIFF'S CLAIMS**

Defendant Bonnie Benson, P.A., by this reference pursuant to Fed.R.Civ.P.

Section 10(c), hereby adopts, as if fully set forth herein, Argument I from the Opening

Brief of Defendant Christy Management in support of its Motion to Dismiss.

## II.    PLAINTIFF SNYDER'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

A Plaintiff, in order to recover for an attorney's negligence, must prove: (1) employment of the attorney; (2) attorney's neglect of reasonable duty; and (3) that the attorney's negligence resulted in and was a proximate cause of loss to the Plaintiff. *Pusey v. Reed,* **258 A.2d 460, 461 (Del.Super. 1969)** [overruled on different grounds, *Starum v. All Engineering Co.*, **350 A.2d 765, 768 (Del. 1975)**; *Weaver v. Lukoff,* **[1986 WL 17121 (Del.)]** (Exhibit A); *David B. Lilly Company, Inc. v. Fisher*, **800 F.Supp. 1203, 1208 (D.Del. 1992) aff'd in part and rev'd in part 18 F.3d 1112, 1119 (CA 3, 1994);** *Woulard v. Kennedy* **[1985 WL 189249 (Del.Super.)]** (Exhibit B).

Plaintiff Snyder has not and cannot allege that he was a client of Defendant Benson and, therefore, his Complaint fails to state a claim upon which relief can be granted against Defendant Benson.

Alternatively, because the duty owed by an attorney is to the attorney's client and the Court, a claim for professional negligence fails when a third person attempts to state a claim against an attorney. *Nichols v. Twilley, Street & Braverman, P.A.*, **[1991 WL 226777 (D.Del.)]** (Exhibit C). Only certain limited exceptions to this general rule have been recognized by the Courts. *Pinckney v. Tigani*, **[2004 WL 2827896 (Del.Super.)]** (Exhibit D); for example, if the non-client had privity of contract with the attorney, the non-client was the intended beneficiary of the attorney's services, or fraud on the part of the attorney. *Nichols*, **[1991 WL 226777 at 2]**.

In the case *sub judice*, Plaintiff Snyder does not (and cannot) allege that he had privity of contract with Defendant Benson, that he was the intended beneficiary of

Defendant Benson's services and/or that Defendant Benson perpetrated a fraud upon him. Indeed, Fed.R.Civ.P. 9(b) requires that as to all averments of fraud, the circumstances constituting the fraud must be stated with particularity. No such particularization is (or could be) alleged by Plaintiff Snyder.

## CONCLUSION

Based upon Plaintiff's Complaint and the authorities set forth herein, Defendant Bonnie Benson, P.A. respectfully requests that Plaintiff Snyder's Complaint be dismissed with Plaintiff Snyder assessed costs and, pursuant to Rule 11, Defendant Benson's reasonable counsel fees.

Respectfully submitted,

/s/ JEFFREY M. WEINER, ESQUIRE #403
1332 King Street
Wilmington, Delaware 19801
(302) 652-0505
Counsel for Defendant Bonnie Benson, P.A.

DATED:    April 19, 2007

## Westlaw.

511 A.2d 1044                                                              Page 1
511 A.2d 1044, 1986 WL 17121 (Del.Supr.)
**(Cite as: 511 A.2d 1044)**

**C**

Weaver v. Lukoff
Del., 1986
(The decision of the Court is referenced in the
Atlantic Reporter in a 'Table of Decisions Without
Published Opinions.')
Supreme Court of Delaware
HOWARD S. WEAVER, Plaintiff-Appellant
v.
DAVID M. LUKOFF, Defendant-Appellee.
**No. 15,1986.**

Submitted: June 6, 1986
Decided: July 1, 1986

AFFIRMED

Superior CA 83C-JL-60

Court Below: Superior Court, New Castle County
C.A. No. 83C-JL-60

Before McNEILLY, HORSEY and MOORE,
Justices.

ORDER

**\*1** This 1st day of July, 1986,

Upon due consideration of plaintiff's Opening Brief
and defendant's Motion to Affirm, it appears to the
Court that:

(1) On July 22, 1981, a Superior Court jury found the
plaintiff guilty of first degree rape and first degree
kidnapping.

(2) On July 12, 1983, the plaintiff brought this civil
action against the defendant, who had been plaintiff's
counsel at his criminal trial. A jury trial was held on
January 6, 1986 on the malpractice claim. At the
end of plaintiff's case in chief, the Superior Court
granted defendant's Motion for Directed Verdict on
the grounds that plaintiff failed to present expert
evidence required to establish defendant's duty of
care and breach thereof.

(3) "In order to recover for an attorney's malpractice,
the client must prove the employment of the attorney
and the attorney's neglect of a reasonable duty, as

well as the fact that such negligence resulted in and
was the proximate cause of loss to the client." Pusey
v. Reed, Del. Super., 258 A.2d 460, 461 (1969),
overruled on different grounds, Starun v. All
American Engineering Co., Del. Supr., 350 A.2d 765,
768 (1975). As a general rule the standard of care
applicable to a professional can only be established
through expert testimony. Seiler v. Levitz Furniture
Co., Del. Supr., 367 A.2d 999, 1008 (1976);
DiFilippo v. Preston, Del. Supr., 173 A.2d 333, 336
(1961); Christian v. Wilmington General Hospital
Association, Del. Supr., 135 A.2d 727, 730 (1957).
An exception to this rule exists, however, when the
professional's mistake is so apparent that a layman,
exercising his common sense, is perfectly competent
to determine whether there was negligence.
Larrimore v. Homeopathic Hospital Association, Del.
Supr., 181 A.2d 573, 577 (1962); Christian, 135
A.2d at 730.

(4) The plaintiff failed to prove the elements of the
defendant's alleged negligence by expert testimony at
trial, as required. Moreover, the plaintiff's
allegations in this case do not fall within the
exception discussed above. The Superior Court,
therefore, was correct in granting the defendant's
Motion for Directed Verdict below.

(5) It is manifest on the face of plaintiff's brief that
the appeal is without merit. The issue on appeal is
clearly controlled by settled Delaware law.

NOW, THEREFORE, IT IS ORDERED THAT
DEFENDANT'S Motion to Affirm is GRANTED,
and the Superior Court judgment is AFFIRMED.

Del., 1986
Weaver v. Lukoff
511 A.2d 1044, 1986 WL 17121 (Del.Supr.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT A

Westlaw.

Not Reported in A.2d                                                                                    Page 1
Not Reported in A.2d, 1985 WL 189249 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Woulard v. Kennedy
Del.super.,1985.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Delaware.
Chester L. WOULARD
v.
John B. KENNEDY.
Submitted: Jan. 11, 1985.
Decided: Aug. 20, 1985.

Chester L. Woulard, pro se.
John B. Kennedy, pro se.
O'HARA, Judge.
*1 This is the Court's decision on John B. Kennedy's
("defendant") motion for summary judgment in the
above captioned matter.[FN1]

> FN1. Defendant's motion is captioned
> "Motion for Summary Judgment And/Or
> Dismissal." Since the motion is
> accompanied by affidavits, it must be treated
> as a motion for summary judgment. *Battista
> v. Chrysler Corporation,* Del.Super., 454
> A.2d 286 (1982), citing *Jones v. Julian,*
> Del.Super., 188 A.2d 521 (1963), rev'd on
> other grounds, Del.Supr., 195 A.2d 388
> (1963).

Chester L. Woulard ("plaintiff") has filed a *pro se*
petition for a declaratory judgment and for damages,
alleging legal malpractice. Plaintiff avers that
defendant was retained by Dorothy Woulard
("plaintiff's mother") to represent plaintiff in
connection with a motion to correct sentence. The
bases of plaintiff's claim are:
A. Defendant's failer [sic] to initiate a reasonable
degree of care and skill in the excution [sic] of his
professional duties and obligations to his client.
B. The harm extended from a want of proper
knowledge and matter's [sic] of law in common use
and principle which every lawer [sic] is to know.
C. Taking of funds and fees, for services, with the
willful entent [sic] to not proform [sic] them.

Attached to plaintiff's complaint is a factual recitation
of plaintiff's communications with defendant.[FN2]

> FN2. Plaintiff filed a motion to amend the
> complaint which he subsequently withdrew.
> The Court, therefore, considers neither that
> motion nor the pleading captioned
> "Additional Facts to the Pending Original
> Complaint" on this motion.

Defendant maintains that there are no material issues
of fact in dispute, and therefore, he is entitled to a
judgment as a matter of law.[FN3]

> FN3. Defendant advances several other
> arguments, but in view of the Court's
> decision, those arguments need not be
> considered. For the same reason,
> defendant's motion to dismiss on the ground
> of abuse of process need not be considered.

On a motion for summary judgment, this Court must
view the facts in the light most favorable to the non-
moving party. See, e.g., *Grossi v. Antonelli,*
Del.Super., 408 A.2d 293 (1979); *Shultz v. Delaware
Trust Company,* Del.Super., 360 A.2d 576 (1976).
Accordingly, in the instant case, the facts must be
viewed in the light most favorable to plaintiff.
Summary judgment is appropriate only if there is no
genuine issue of material fact. Superior Court Civil
Rule 56(c).

The facts, viewed in the light most favorable to
plaintiff, are as follows: On September 15 or 18,
1982,[FN4] plaintiff's mother signed a "Criminal
Contract of Employment." By the terms of the
contract and for consideration in the amount of $375,
defendant agreed to provide plaintiff "representation
as to investigation only as to sentencing
discrepancies." The contract specifically provided
that it was "not for Court hearing or motion", and that
if Court appearances were necessary, a new contract
would be negotiated. The contract also listed the
"Superior Court" as the "case no."

> FN4. The notation on the contract is unclear.
> The exact date the contract was signed is not
> material, however.

On September 15, 1982, defendant wrote a letter to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                    Page 2
Not Reported in A.2d, 1985 WL 189249 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

plaintiff advising him that defendant had been retained by plaintiff's mother and requesting that plaintiff send defendant any documents in his possession relevant to the alleged sentencing discrepancies.

Plaintiff wrote to defendant on September 26, 1982, requesting that defendant visit him at the Delaware Correctional Center ("Center") to discuss the "very complicated matter." On September 30, 1982, defendant wrote a letter, a copy of which was transmitted to plaintiff, to the Center requesting copies of all documents in plaintiff's file.

On October 15, 1982, plaintiff again wrote to defendant requesting that defendant visit plaintiff at the Center so that they could discuss "some information" plaintiff had received with respect to his sentence. Plaintiff stated that he had checked the Delaware Code and opined that the intent of the Code was not being followed with respect to his sentence. He also expressed his understanding that the Delaware Supreme Court had given the Center the authority to remove accrued good time.

*2 On November 10, 1982, plaintiff's mother signed an addendum to the "Criminal Contract of Employment." By the terms of the addendum and for consideration in the amount of $500, defendant agreed to provide "representation as relating to motion for modification of sentence order." The addendum specifically provided that it was "not for appeal or parole hearing."

On November 18, 1982, defendant wrote plaintiff a letter informing him that he was "preparing all documentation with respect to a Motion concerning your case." On December 7, 1982, plaintiff wrote defendant a letter expressing plaintiff's dissatisfaction with defendant's representation and requesting the return of the $625 in fees paid to defendant as of that date.[FN5]

> FN5. In the letter, plaintiff stated that he had written to defendant on five prior occasions. Only two prior communications, however, are a part of the record. In the December 7 letter, plaintiff also threatened to file suit against defendant.

Defendant filed a motion to correct plaintiff's sentence on January 5, 1983 in this Court. In response to a request from the Court, defendant filed a two page memorandum of law in support of the

motion on February 1, 1983. The motion was denied on February 28, 1983. On July 11, 1983, plaintiff filed a *pro se* "motion to correct mandatory sentence, goodtime" in this Court. That motion was denied on July 19, 1983.

Sometime thereafter, plaintiff filed a *pro se* appeal, which was consolidated with several other appeals, to the Delaware Supreme Court. On November 17, 1983, the Supreme Court ruled in plaintiff's favor. See *Johnson v. State,* Del.Supr., 472 A.2d 1311 (1983). The Court concluded that the Department of Correction's retroactive application of the Court's decision in *Richmond v. State,* Del.Supr., 446 A.2d 1091 (1982) [FN6] constituted an "*ex post facto-like* " violation of plaintiff's Fourteenth Amendment due process rights. *Johnson v. State,* supra.

> FN6. In *Richmond v. State,* supra, the Supreme Court held that minimum mandatory prison sentences may not be reduced by credits earned for good behavior. After the issuance of *Richmond,* the Department of Correction, of its own accord, recomputed the expiration date of plaintiff's sentence, eliminating good time credits that had been applied to the minimum mandatory portion of his prison term.

In order to recover for an attorney's malpractice, a client must prove 1) the employment of the attorney; 2) the attorney's neglect of a reasonable duty; and 3) the fact that such negligence resulted in and was the proximate cause of loss to the client. *Pusey v. Reed,* Del.Super., 258 A.2d 460 (1969); [FN7] see *Bowman v. Abramson,* E.D.Pa., 545 F.Supp. 227 (1982). To prove damages, a client must show that but for the negligence complained of, the client would have been successful in prosecuting or defending the action in question. *Pusey v. Reed,* supra.

> FN7. In *Starun v. All American Engineering Co.,* Del.Supr., 350 A.2d 765 (1975), the Court overruled that portion of *Pusey* interpreting 19 *Del.C.* § 2361. Legal malpractice was not an issue in *Starun.*

Plaintiff suggests that defendant neglected his duty to represent plaintiff before the United States District Court of Delaware, the Delaware Supreme Court and the Delaware Superior Court. With respect to the District Court, this Court concludes that there is no disputed material fact regarding defendant's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                    Page 3
Not Reported in A.2d, 1985 WL 189249 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

representation.

The "Criminal Contract of Employment" produced by defendant refers only to the Superior Court. It makes no reference to the District Court. Although plaintiff alleges in his answering brief that he wrote letters to defendant on September 29, 1982, and October 15, 1982, informing defendant of matters pending in the District Court, and that by letter dated November 18, 1982, defendant agreed to represent him in those proceedings, those allegations are not supported by the record. There is no letter dated September 29, 1982 in the record, and the October 15 and November 18, 1982 letters make no reference to the District Court.

**\*3** When a motion for summary judgment is made and supported, the adverse party may not rest upon the mere allegations and denials of his pleading. Superior Court Civil Rule 56(e); see *Nix v. Sawyer,* Del.Super., 466 A.2d 407 (1983). Plaintiff has adduced no evidence from which it can be inferred that defendant was retained to represent him before the District Court, and therefore, no factual issue exists with respect to the first element of *Pusey v. Reed,* supra, the employment of the attorney.

With respect to the Supreme Court, the Court also concludes that there is no disputed material fact regarding defendant's representation. The "Criminal Contract of Employment" states that the agreement is not for court hearings or motions and the addendum specifically provides that the agreement is not for an appeal. Plaintiff has adduced no evidence from which it can be inferred that defendant was retained to represent him before the Supreme Court, and therefore, no factual issue exists with respect to the first element of *Pusey v. Reed,* supra.

With respect to defendant's representation of plaintiff in this Court, the Court also concludes that no factual issue exists. While it is undisputed that defendant was retained to represent plaintiff before the Superior Court in connection with sentencing discrepancies, defendant has submitted the affidavit of Stanley Lowicki, Esquire, a member of the Bar of the State of Delaware since 1960, who is actively involved in the practice of criminal law. Lowicki attests that defendant represented plaintiff in accordance with the purpose for which he was retained. Plaintiff's mere allegations are, therefore, insufficient to defeat defendant's motion.

Even assuming *arguendo,* however, that plaintiff had adduced evidence from which it could be inferred

that defendant had not performed in accordance with the terms of his representation,[FN8] that evidence would not be sufficient to defeat defendant's motion. Since it is undisputed that plaintiff's sentence ultimately was corrected by the Supreme Court's decision in *Johnson v. State,* plaintiff has sustained no harm. Plaintiff's mere allegation that he had to serve two additional years as a result of defendant's alleged negligence finds no support in the record. Moreover, there is no evidence from which it can be inferred that damages, the third element of legal malpractice, were sustained.

FN8. An opposing affidavit, for example.

There being no issues of material fact, defendant is entitled to a judgment as a matter of law. Defendant's motion for summary judgment is granted.

IT IS SO ORDERED.

Del.Super.,1985.
Woulard v. Kennedy
Not Reported in A.2d, 1985 WL 189249 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                         Page 1
Not Reported in F.Supp., 1991 WL 226777 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

**C**
Nichols v. Twilley, Street & Braverman, P.A.
D.Del.,1991.
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Edward NICHOLS, Plaintiff,
v.
TWILLEY, STREET & BRAVERMAN, P.A., Carol
P. Braverman, Esq., Joel A. Nichols, Defendants.
**Civ. A. No. 91-338-CMW.**

Oct. 3, 1991.

Edward Nichols, plaintiff pro se.
John H. Newcomer, Jr., Esquire of Bayard,
Handelman & Murdoch, Wilmington, Del., for
Defendants. Twilley, Street & Braverman, P.A., and
Carol P. Braverman, Esquire.
Joel A. Nichols, pro se defendant.

*OPINION*
CALEB M. WRIGHT, Senior District Judge.
*1 Plaintiff filed this action alleging four causes of
action: (1) Negligence against Twilley, Street &
Braverman, P.A. and Carol P. Braverman; (2)
Negligence against Joel A. Nichols; (3) Mutual
Contributory Negligence against all defendants; and
(4) Malpractice against Twilley, Street & Braverman,
P.A. and Carol P. Braverman. All of these counts
are based on the alleged failure of Defendants to file
an affidavit of children's rights with the Petition for
Divorce as required by the State of Delaware.

On July 2, 1991, Defendants Twilley, Street &
Braverman, P.A. and Carol P. Braverman filed a
motion to dismiss and opening brief pursuant to
Fed.R.Civ.P. 12(b)(6). Further, on July 15, 1991,
Defendant Joel A. Nichols filed a motion to dismiss
for failure to state a claim upon which relief can be
granted.

Plaintiff Nichols, acting *pro se* failed to respond
within the time limits set forth in Local Rule 3.1.
The Court, on September 19, 1991 issued an Order
for Plaintiff to show cause by September 26, 1991
why these motions should not be decided solely on
the basis of the Defendants' submissions. The time
period for Plaintiff to respond to the motions and the
Order to Show Cause has passed and Plaintiff has not
submitted anything to the Court. Therefore, the

Court is now prepared to rule on the outstanding
motions to dismiss.

*I. DISCUSSION*

A motion to dismiss for failure to state a claim is to
be granted only if "it appears beyond doubt that
plaintiff can prove no set of facts in support of his
claim which would entitle him to relief." *Conley v.
Gibson,* 355 U.S. 41, 45-46 (1957). In deciding, the
facts alleged in the complaint must be taken as true
and the complaint must be construed in the light most
favorable to the Plaintiff. *Hughes v. Rowe,* 449 U.S.
5, 10 (1980). Therefore, if "under any reasonable
reading of the pleadings, the plaintiff may be entitled
to relief" the motion must be denied. *Colburn v.
Upper Darby Township,* 838 F.2d 663, 665-666 (3d
Cir.1988), (quoting *Estate of Bailey by Oare v.
County of York,* 768 F.2d 503, 506 (3d Cir.1985)).

Each of the four causes of action is based on
negligence and thus, Plaintiff, at a minimum, must
have alleged facts sufficient for the Court to believe
that the Defendants owed a duty to the Plaintiff.
Without a duty being owed, there can be no breach of
that duty and thus, no action for negligence will exist.

The complaint states the following:

[D]efendant FIRM, in the person of Defendant
CAROL P. BRAVERMAN, was retained to represent
Defendant JOEL A. NICHOLS in domestic litigation
against plaintiff.

*Complaint,* Docket Item 1, p. 3 ¶ 9. The Complaint
then indicates that, pursuant to Delaware law, where
there are living children of the marriage an affidavit
shall be submitted with the petition for divorce
stating that the petitioner has read or been advised of
the children's rights (including, but not limited to, the
children's right to a continuing relationship with both
parents). *Complaint,* Docket Item 1, pp. 3-4 ¶¶ 11,
12. Finally, the Complaint indicates that, although a
petition for divorce was filed by the Defendants and
there existed a living child of the marriage, no
affidavit was filed with the petition for divorce as
required by law. *Complaint,* Docket Item 1, pp. 3-4
¶ 10, 16.[FN1]

*2 Regarding the duties owed, the Plaintiff alleges

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.
EXHIBIT C

Not Reported in F.Supp.                                                                                        Page 2
Not Reported in F.Supp., 1991 WL 226777 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

the following:

*Count I (Defendant Firm and Defendant Braverman)*

31. Defendants owed a duty to Plaintiff as a member of the public and an adverse party to litigation to practice law as provided by statute and to comply with all filing requirements provided by law.

32. Defendants owed a duty to Plaintiff as a member of the public and an adverse party to litigation to not file and cause to be served upon Plaintiff any Petition For Divorce that did not meet the requirement provided by Delaware law.

33. Defendants owed a duty to Plaintiff as a member of the public and an adverse party to litigation to not cause Plaintiff to be enjoined from the normal conduct of his personal affairs in the absence of a Petition that met *all* of the requirement provided by law.

34. Defendants owed Plaintiff as a member of the public and an adverse party to litigation the exercise of due diligence and care in the preparation of Petitions to insure that they were prepared as provided by law.

35. At all times during the complained of conduct of Defendants, Plaintiff was a member of the public and an adverse party in domestic litigation and was thus owed the recited duties.

*Count II (Defendant Nichols)*

39. Defendant owed a duty to Plaintiff as an adverse party to litigation not to file and cause to be served upon Plaintiff any Petition For Divorce that did not meet the requirements provided by Delaware law.

40. Defendant owed a duty to Plaintiff as an adverse party to litigation to not cause Plaintiff to be enjoined for the normal conduct of his personal affairs in the absence of a Petition that met *all* of the requirement provided by law.

41. Defendants owed Plaintiff as an adverse party to litigation the exercise of due diligence and care in the filing of Petitions to insure that they were prepared as

provided by law.

*Count III (all Defendants)*

45. Each of the Defendants owed Plaintiff the above cited duties.

*Count IV (Defendant Firm and Defendant Braverman)*

49. Defendants FIRM and CAROL P. BRAVERMAN'S failure to file the affidavit of children's rights constitutes statutory negligence.

50. Said negligence amounts to malpractice in that said Defendants clearly failed to exercise on behalf of their client, Defendant JOEL A. NICHOLS, the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession practicing in Kent County, Delaware.

*Complaint,* pp. 7-13 ¶¶ 31-35, 39-41, 45, 49, and 50. Thus, each count of the complaint alleges a duty owed to a member of the public and/or an adverse party to litigation. Only if the Court finds a duty owed to Plaintiff will the complaint avoid dismissal. *Vickodil v. Commonwealth of Pennsylvania Insurance Dept.,* 559 A.2d 1010, 1012 (Pa.Commw.1989).

Generally, a claim for professional negligence will fail when a third party brings an action against an attorney because beyond the duty owed to their client and the Court, no other duty is owed by an attorney. *Tappen v. Ager,* 599 F.2d 376, 378 (10th Cir.1979); *Conservative Club of Washington v. Finkelstein,* 738 F.Supp. 6, 9 (D.C.1990); *Cresswell v. Sullivan & Cromwell,* 704 F.Supp. 392, 410 (S.D.N.Y.1989) (citing *Savings Bank v. Ward,* 100 U.S. (10 Otto) 195, 200 (1880)); *Kahn v. Burman,* 673 F.Supp. 210, (E.D.Mich.1987); *Nix v. Sawyer,* 466 A.2d 407, 413 (Del.Super.1983); *Clagett v. Dacy,* 420 A.2d 1285, 1287 (Md.1980); *Chalpin v. Brennan,* 114 Ariz. 124 (1976); *Chicago Title Ins. Co. v. Holt,* 36 N.C.App. 284 (1978); *Metzker v. Slocum,* 272 Or. 313 (1975). Only if the complaining party can show there was fraud or collusion on the part of the attorney, privity of contract with the attorney or that they were an intended beneficiary of the attorney's services does a duty arise. *Finkelstein,* 738 F.Supp. at 10; *Ward,* 100 U.S. at 200; *Vereins-Und Westbank, AG v. Carter,* 691 F.Supp. 704, 715-716 (S.D.N.Y 1988); *Flaherty v. Weinberg,* 303 Md. 116 A.2d 618 (1985);

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                 Page 3
Not Reported in F.Supp., 1991 WL 226777 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

*Morowitz v. Marvel,* 423 A.2d 196 (D.C.1980); *Lucas v. Hamm,* 56 Ca.2d 583 (1961), *cert. denied* 368 U.S. 987 (1962).

*3 Clearly, under any reading of the complaint none of the exceptions to the general rule has been alleged nor can be. There is no allegation of fraud or collusion (which pursuant to Fed.R.Civ.P. 9 would require pleading with specificity). Further, there is no allegation, nor could there be that Plaintiff was in privity of contract with the attorney or her firm. Finally, under any reasonable reading of the facts, the Court is unable to find that the Plaintiff was an intended beneficiary of the Defendants attorney-client relationship, the parties interests were directly adverse.

The Court agrees with, and adopts, the rule stated in *Finkelstein:*

An attorney owes a duty to zealously and vigorously represent the interests of his client(s). To adopt a rule of law that would expose an attorney to the prospect of negligence claims by parties whose interests are adverse to those of his client would result in the demise of our adversarial system of justice. "[An] attorney owes his primary and paramount duty to his client. The very nature of the adversary process precludes reliance by opposing parties. While it is true that the attorney owes a general duty to the judicial system, it is not the type of duty which translates into liability for negligence to an opposing party where there is not foreseeable reliance by that party on the attorney's conduct."

*Finkelstein,* 738 F.Supp. at 10 (*quoting Bickel v. Mackie,* 447 F.Supp. 1376, 1381 (N.D.Iowa) *aff'd.,* 590 F.2d 341 (8th Cir.1978). Further, in *Tappen* the Court stated:

Negligence does not exist in the abstract, it contemplates a legal duty owing from one party to another and the violation of that duty by the person owing it. In the present context, the duty is owed by the lawyer to his client and to the legal system. It does not form a basis for a suit by an opposing party.

*Tappen,* 599 F.2d at 379. The Court concludes that Twilley, Street & Braverman, P.A. and Carol P. Braverman were under no duty to Plaintiff Nichols and no cause of action can be maintained. Thus, with respect to Counts I and III, the complaint will be dismissed as to these defendants.[FN2]

Count IV alleges statutory negligence. The test for

statutory negligence, or negligence per se, is whether the alleged violation of the statute caused injury to a member of the class that was intended to be protected by the legislation. The statute allegedly violated by Braverman and the firm provides, in pertinent part:

In any case where there are living children of the marriage, the petitioner shall submit with the petition an affidavit signed by the petitioner showing that the petitioner has read or has been advised of the following children's rights, which shall be set forth in full in said affidavit:

(a) The right to a continuing relationship with both parents.

13 Del.C. § 1507(g)(a); *Complaint,* pp. 3-4 ¶¶ 11-12. As the complaint reads, this statute is to be "advisory or cautionary in nature." This statute clearly involves the petitioner's rights as only the petitioner for divorce is required to sign the affidavit. Therefore, any possible action for violation of this statute would be for the benefit of the petitioner, in this case, Joel A. Nichols.

*4 Further, even if, as alleged in the complaint, the conduct amounted to "malpractice in that said Defendants clearly failed to exercise on behalf of their client, Defendant JOEL A. NICHOLS, the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession," any duty owed or any duty breached could only serve as grounds for a complaint by Joel A. Nichols, not Edward Nichols. *Complaint,* p. 13, ¶ 50. Thus, the complaint with respect to count IV is dismissed as to the defendants Twilley, Street & Braverman, P.A. and Carol P. Braverman.

Count II alleges negligence on the part of Defendant Nichols for breaching a duty owed an adverse party in litigation. Consistent with the above disposition of the complaint against the law firm and attorney, the Court finds that one litigant does not owe an opposing litigant any duty of care in the prosecution of a lawsuit absent any indicia of fraud or collusion. The Plaintiff in this case is unable, under any reading of the complaint, to show that the necessary element of a duty of care is present as between opposing litigants in a lawsuit. Therefore, defendant Nichols motion to dismiss will be granted.

II. *CONCLUSION*

For the reasons stated above, Defendants Twilley,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                   Page 4
Not Reported in F.Supp., 1991 WL 226777 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

Street & Braverman, P.A. and Carol P. Braverman
motion to dismiss pursuant to <u>Fed.R.Civ.P. 12(b)(6)</u>
is granted.    Further, Defendant Joel A. Nichols
Motion to dismiss pursuant to <u>Fed.R.Civ.P. 12(b)(6)</u>
is granted.   An appropriate order will be entered.

> <u>FN1.</u> Plaintiff also, while denying that he is
> asking this Court to interfere in anyway with
> the State Court proceedings, indicates that a
> preliminary injunction issued by the State
> Court was wrongfully issued on the basis of
> the defective divorce petition.    As before,
> the Court would refuse on the basis of the
> *Younger* doctrine to inject itself into a state
> court proceeding.   *See, Nichols v. Buckson,
> et. al.,* Civil Action Number 91-24 JJF.
> Further, the Court would like to note that
> while the Plaintiff indicates in his complaint
> that 91-24-JJF has a Consent Decree filed
> that is awaiting the Judge's signature, the
> Consent Decree was not filed until after 91-
> 24 was dismissed which was before this case
> was filed.    Additionally, Plaintiff contends
> that another lawsuit filed in this Court 91-
> 260-JJF has a request for Default filed and
> awaiting entry, that case currently has a
> motion to dismiss pending. (*Complaint,* p. 7
> ¶ 27 and Docket Sheets)

> <u>FN2.</u> Count III which alleges contributory
> negligence is actually a defense to an
> allegation of negligence.   Thus, on the face
> of the complaint alone, Count III with
> respect to all defendants is dismissed.

D.Del.,1991.
Nichols v. Twilley, Street & Braverman, P.A.
Not Reported in F.Supp., 1991 WL 226777 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d                                                                                        Page 1
Not Reported in A.2d, 2004 WL 2827896 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

**C**

Pinckney v. Tigani
Del.Super.,2004.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Delaware.
Douglas PINCKNEY, Plaintiff,
v.
Bruce W. TIGANI, Defendant.
**No. Civ.A. 02C-08-129FSS.**

Submitted July 30, 2004.
Decided Nov. 30, 2004.


Decision After Hearing and Briefing Judgment for
Defendant.

<u>Kevin W. Gibson</u>, Gibson & Perkins, PC, Media,
Pennsylvania, for Plaintiff.
<u>Colleen Shields</u>, and <u>John Elzufon</u>, Elzufon Austin
Reardon Tarlov & Mondell, Wilmington, Delaware,
for Defendant.

OPINION AND ORDER
<u>SILVERMAN</u>, J.
**\*1** This is a legal malpractice case. Plaintiff is a
named beneficiary of a testamentary trust written by
Defendant, a member of Delaware's and
Pennsylvania's Bars, for a settlor living in
Pennsylvania. The trust was drafted correctly,
executed by the settlor, and it was enforceable. The
problem is that although the estate probably had
enough assets to fund the trust fully, due to
restrictions on the assets Plaintiff only received a
portion of the bequest Plaintiff holds the attorney
liable for not reviewing the settlor's finances and for
not advising her to change her estate plan to free up
more assets for Plaintiff.

The attorney's defense is in depth. First, Defendant
contends that Plaintiff has no cause of action against
him because Plaintiff was not Defendant's client.
Next, Defendant contends that he was neither hired
nor duty-bound to review the settlor's finances. He
further relies on limitations and warnings in his letter
of engagement with the settlor. Finally, Defendant
argues that if his negligence is established somehow,
Plaintiff has not proved Defendant caused Plaintiff's
loss because no one can say what, if anything, settlor

would have done had she been told that her assets
were restricted and that she would have to change her
estate plan to accomplish the trust's purpose.

The court, therefore, must consider whether
Pennsylvania's or Delaware's law applies; whether
Plaintiff has a cause of action under the applicable
law, i.e. whether Defendant had a duty to anyone to
investigate the settlor's assets or provide better
warning and, if so, whether Defendant was negligent.
Finally, the court must consider whether Plaintiff
proved that any negligence caused damage. The
second issue just mentioned, to whom does a
scrivener owe a duty of care, is a matter of first
impression in Delaware.

Although the court's analysis is long and involved,
this is not a close case. Plaintiff is confounded at
every step. In summary, as a third-party beneficiary,
Plaintiff has no cause of action under Pennsylvania's
tort law. He also has failed to state a claim under
Delaware law. Furthermore, even if he had a cause of
action, Plaintiff does not have a case under
Delaware's tort law because he has no expert who
opines that Defendant violated Delaware's standard
of care. Plaintiff cannot prove that Defendant was
negligent, much less that, but for Defendant's
negligence, Plaintiff would have received the full
bequest.


I.

On July 14, 1999, Joanne Pinckney contacted
Defendant on Jeanne Pinckney's behalf to revise
Jeannne's estate plan. As mentioned, Defendant is a
lawyer admitted in Delaware and Pennsylvania. He
specializes in estate work. Joanne told Defendant that
Jeanne, Joanne's mother, was concerned that Jeanne's
grandson, Plaintiff, would be disinherited by his
father, Robert, and Jeanne wanted to leave something
for Plaintiff. Neither Joanne nor Jeanne followed-up
with Defendant for several months, however. In
December 1999, Defendant says that Matt Brown,
Jeanne's financial advisor, contacted him on Jeanne's
behalf. Defendant says that he told Brown that he
was still waiting for financial information requested
in July 1999, and that Brown said he would contact
Joanne and remind her to send the financials. Plaintiff
denies that. He suggests that had Brown been asked,
Brown would have provided the necessary financial

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2004 WL 2827896 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 2

records.

**\*2** On February 1, 2000, Joanne contacted Defendant again. She told him Jeanne's health was deteriorating and Jeanne wanted a Supplemental Declaration of Trust, quickly. Defendant had created a trust for Jeanne in 1995, and she wanted to amend it to divert $250,000 from Robert's share to Plaintiff. Defendant says that he was told that there was no time to fully review all of Jeanne's finances and that "Jeanne had plenty. Jeanne just wants you to prepare the amendment." [FN1] Plaintiff denies that, too.

FN1. R. at 70:4-6.

Using materials from the 1995 trust and the Irrevocable Life Insurance Trust prepared by another law firm, Defendant correctly drafted a proper Supplemental Declaration of Trust. He also spoke with Jeanne on February 7, 2000 to ensure that the modified trust was what Jeanne wanted, that he was authorized to deal with Joanne, and to confirm that Jeanne was not subject to undue influence. Jeanne listed her assets for Defendant: a $1 million insurance policy and $675,000 remaining from her husband's estate. Defendant says he again requested financial information and told Jeanne of the risk of proceeding without a full financial review. Pointing to the lack of any writing memorializing a warning, Plaintiff questions whether Defendant gave one.

Satisfied that the Supplemental Declaration of Trust reflected Jeanne's testamentary intent, Defendant sent Jeanne a draft on February 8, 2000, accompanied by a letter confirming his terms of engagement. The letter outlined the scope of representation, namely drafting the supplemental trust. The letter also explained:
Since this Supplemental Declaration of Trust is being forwarded to you on an expedited basis and without the opportunity to review and discuss your entire estate plan and the current value and titling of your assets, our engagement in this matter is limited to preparing the enclosed document in accordance with your instructions during our February 7, 2000 telephone conversation.

Defendant argues that his letter effectively limited the scope of his representation, while Plaintiff argues it did not. The letter, however, indisputably established that Defendant's contractual obligations did not include financial research. Those issues are discussed below.

In any event, Jeanne sent a letter on February 12, 2000, to Defendant confirming receipt and her wish to proceed. On February 15, 2000 the Supplemental Declaration of Trust was in final form and sent to Jeanne with instructions for execution. Jeanne signed it on February 22, 2000 and returned a copy to Defendant on February 23, 2000.

On August 14, 2000, Jeanne died. Her estate could not fund the entire $250,000 bequest to Plaintiff. As it turned out, a lot of Jeanne's assets were tied up in IRA's. Jeanne could have seen to it that the trust was funded, but she would have had to rely on a paid tax advisor to figure out how to rearrange her assets and what that would mean to her entire estate plan. This was not a situation, as Plaintiff implies, where Jeanne could have simply announced, "Take $250,000 from Robert and give it to Douglas." In order to see to it that Plaintiff received $250,000, Jeanne would have had to have made several decisions, starting with the decision to pay for more advice.

**\*3** It is not clear that Jeanne was even willing to spend more money for advice, much less to rearrange her estate. Her financial advisor, Matt Brown, mentioned above, testified by deposition that he thought Jeanne did not want Defendant to review her financial picture. And although the record is complete, the court cannot determine either what it would have cost Jeanne in fees and taxes or how the other beneficiaries would have been affected if Jeanne had redrafted her estate plan to be certain Plaintiff received the full bequest.

Eventually, Plaintiff received $118,250 from a settlement with Jeanne's estate. Plaintiff executed a release for the estate, but reserved the right to pursue legal action against Defendant. Now, Plaintiff seeks the difference between the bequest and the settlement.

II.

Plaintiff filed suit on August 12, 2002. Defendant answered on October 15, 2002. Discovery proceeded and on May 15, 2003, the parties filed cross-motions for summary judgement. On February 6, 2004 the court heard the motions, denying them without prejudice pending briefing. On February 13, 2004, the court heard Defendant testify. Otherwise, the evidence was submitted on paper, including depositions. Although Plaintiff bears the burden of proof, Defendant filed the first post-trial brief, on June 14, 2004. On July 15, 2004, Plaintiff submitted

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2004 WL 2827896 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Page 3

his opening post-trial brief. On July 29, 2004, Defendant filed his post-trial reply brief.

### III.

It is not easy to see the precise legal theory Plaintiff is pursuing. The complaint consists of twenty-eight paragraphs comprising one count. The first 21 paragraphs lay out the case's factual background. The remaining paragraphs articulate the cause of action. Specifically, the complaint alleges in its final paragraphs:

23. At all times relevant, Defendant knew or should have known that Plaintiff was an intended third-party beneficiary of decedent's Will and Trust.

24. With knowledge that Plaintiff was a third-party beneficiary, Defendant was charged with a duty to ensure that Plaintiff was to receive the distribution provided for in the Trust.

25. The Defendant Tigani owed the Plaintiff as an intended third-party beneficiary of the Decedent's Last Will and Testament, the applicable standard of care required of lawyers engaged in estate planning.

26. Defendant Tigani deviated from the applicable standard of care required of lawyers and committed a culpable act of malpractice by failing to adequately advise the Decedent that in order to fund the Plaintiff's distribution provided in the Trust, that Decedent needed to change the beneficiary of her IRA accounts to change the beneficiary of her estate or to Trust.

27. As a result and direct proximate cause of the Defendant Tigani's negligence, the Plaintiff was damaged in that he failed to receive the full share of the Decedent's estate as intended by the Decedent.

Although, as shown above, the complaint charges Defendant with knowing that Plaintiff was a third-party beneficiary of the trust, the actual accusation concerns Defendant's alleged breach of "the standard of care." Moreover, the complaint tries to allege that Defendant's "negligence" was the "proximate cause" of damage to Plaintiff. Thus, despite its mentioning Plaintiff's status as a third-party beneficiary, the complaint is for negligence, not breach of contract. Plaintiff simply alleges that Defendant owed Plaintiff, as a third-party beneficiary, a duty of care. Plaintiff, therefore, must prove all elements of his tort case-negligence, causation and damages-by a preponderance of the evidence.[FN2] Further, "[I]t is well settled under Delaware law that claims of legal malpractice must be supported by expert testimony."[FN3]

FN2. *Reybold Group, Inc. v. Chemprobe Tenchnologies, Inc.*, 721 A .2d 1267, 1269-70 (Del.1998).

FN3. *Giordano v. Heiman,* Del.Supr. No. 458, 2000, Walsh, J. (January 18, 2001)(ORDER at 3).

**\*4** In passing, the court observes that Plaintiff's foregoing a contract claim was not oversight. First, Defendant's letter of engagement, presented above, effectively disclaims contractual liability for anything besides drafting. Moreover, even without the written disclaimer, Plaintiff's damage claim as a third-party beneficiary under this case's facts is attenuated and insubstantial.

### IV.

The first issue is which state's law, Delaware's or Pennsylvania's, applies here. That matters because, as discussed below, under Pennsylvania law a disappointed beneficiary cannot pursue a tort claim against the estate's lawyer unless they had an attorney-client relationship, which Plaintiff did not have with Defendant. In Pennsylvania, a testator's lawyer has no duty to the beneficiary absent privity between them. If, however, Delaware's law applies and if it recognizes a duty to a beneficiary, that at least would allow Plaintiff to go forward.

Just as the complaint does not state clearly the legal theory it relies on, contract, tort or both, it also is unclear as to which State's law Plaintiff relies on, Pennsylvania's or Delaware's. Although the estate documents dictate that the trust will be governed by Pennsylvania law, this is a negligence action. So, it remains to be decided whether Delaware's or Pennsylvania's tort law applies. Delaware's conflict of laws analysis provides that the law of the state with "the most significant relationship" governs in tort cases.

Delaware has adopted the Restatement (Second) of Conflicts § 145, thus it controls whether Delaware's or Pennsylvania's law applies.[FN4] Section 145 gives priority to the state with most significant relationship to the occurrence and parties, using the principles described in Restatement (Second) of Conflicts § 6. Section 6 lists the following factors: (1) interstate and international system needs; (2) relevant forum policies; (3) relevant policies of other interested states in the particular issue; (4) protecting justified

Not Reported in A.2d
Not Reported in A.2d, 2004 WL 2827896 (Del.Super.)
(Cite as: Not Reported in A.2d)

expectations; (5) basic policies underlying the field of law; (6) certainty, predictability, and uniformity of result; and (7) ease in determining and applying the law. Section 145, in turn, lists the relevant contacts to be considered when applying § 6, including: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) domicile; and (4) the place where the relationship between the parties is centered.

FN4. *Travelers Indemnity Company v. Lake,* 594 A.2d 38, 47 (Del.1991).

Here, the court must determine the site of the negligence for § 145's purposes. *LNC Investments, Inc. v. First Fidelity Bank, National Association,* [FN5] addresses a similar conflict of laws issue between New York law, which has a privity bar, and New Jersey law, which permits non-clients to bring malpractice actions. A group of investors in a trust sued the trustee, who then sought indemnification from the trust's lawyers. New York's courts, similar to Delaware's, focus on the parties' domiciles and the site of the alleged tort. [FN6] In *LNC Investments,* the defendant law firm was domiciled in New York, and the trustee was domiciled in New Jersey. The trust was executed and delivered in New York and governed by New York law. The court noted, however, that the "locus of the tort of professional malpractice is somewhat less clear." [FN7]

FN5. 935 F.Supp. 1333 (S.D.N.Y.1996).

FN6. *Id.* at 1350.

FN7. *Id.*

*5 *LNC Investments* determined that the faulty advice was most likely given in New York, where the law firm was based. [FN8] The court then turned to the forum state, New York, and explained, "A state has a strong interest in regulating the conduct of a law firm licensed to practice within its borders, and a law firm consents to be so regulated when it locates its offices in a particular state." [FN9] Thus, *LNC Investments* applied New York law.

FN8. *Id.*

FN9. *Id.* at 1350-51.

Here, Plaintiff is a New Jersey resident. The settlor

lived in Pennsylvania. Defendant has been an active member of the Delaware Bar for over twenty years. While Defendant also is a member of the Pennsylvania Bar, he maintains an office in Wilmington, Delaware. Any advice provided or work completed by Defendant for the settlor probably was performed in Delaware; therefore, although the injury occurred in Pennsylvania, Delaware is the place where the conduct giving rise to the injury occurred. Wilmington is where the relationship between the parties was centered because that is where all consultation, drafting and advice by Defendant were performed. Moreover, Delaware's courts have a special interest in the standards of practice for Delaware lawyers. The question is close, but under the Restatement (Second) of Conflicts § 145's analysis, Delaware has the most significant relationship to the case and thus, Delaware law applies.

V.

The second issue is whether, as a matter of law, Defendant owed any duty of care to Plaintiff. There are several approaches to standing in the estate planning, legal negligence context, including: strict privity, abandonment of privity altogether, and various middle-ground approaches, including Pennsylvania's third-party beneficiary rule.

A. Strict Privity

Defendant urges the court to require strict privity by following *Robinson v. Benton,* [FN10] an Alabama Supreme Court decision reflecting the minority view barring malpractice actions absent privity, a direct relationship between the defendant lawyer and the plaintiff. *Robinson* involved an attorney who was directed by his client to destroy her will. Robinson failed to do it, and stepchildren that the testatrix wanted to disinherit took an equal share with her children. Citing Texas law, [FN11] *Robinson* upheld the privity bar and refused to consider the claim.

FN10. 842 So.2d 631 (Ala.2002).

FN11. *Id.* at 636, citing *Barcelo v. Elliot,* 923 S.W.2d 575 (Tex.1996).

Strict privity, as applied in *Robinson,* is the approach historically followed by courts, but it has become outdated. In order to recover for legal malpractice,

Not Reported in A.2d                                                                                      Page 5
Not Reported in A.2d, 2004 WL 2827896 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

plaintiff must show that the attorney owed a duty of care to plaintiff, the attorney breached that duty, and the attorney's negligence proximately caused plaintiff's injury and damages.[FN12] Privity is a contract-based principle, preventing actions against the attorney by parties who do not have a significant nexus with the attorney.[FN13] Privity helps establish whether an attorney-client relationship exists. That relationship triggers the duty, the first prong of liability.

> FN12. Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice § 8 .1, at 555 (4th ed.1996).

> FN13. George S. Mahaffey, Jr., *Cause-In-Fact and the Plaintiff's Burden of Proof with Regard to Causation and Damages in Transactional Legal Malpractice Matters: The Necessity of Demonstrating the Better Deal,* 37 Suffolk U.L.Rev. 393, 403-04 (2004).

*6 Strict privity, the rule in Alabama,[FN14] Maryland,[FN15] Nebraska,[FN16] Ohio,[FN17] Texas,[FN18] and, as mentioned, New York,[FN19] completely bars malpractice actions by beneficiaries against estate planning attorneys. Despite the harsh results potentially reached in strict privity states, it is noteworthy that "[e]ven those jurisdictions that profess to follow a strict rule of privity usually do not do so unambiguously.... In some of these jurisdictions, the courts explicitly recognize the possibility of exceptions to the rule." [FN20] For example, in *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests,*[FN21] the Supreme Court of Texas held that negligent misrepresentation by attorneys is actionable by third parties. The court painstakingly distinguished an earlier, contrary decision: "Under the tort of negligent misrepresentation, liability is not based on the breach of duty a professional owes his or her clients or others in privity, but on an independent duty to the nonclient based on the professional's manifest awareness of the nonclient's reliance on the misrepresentation and the professional's intention that the nonclient so rely." [FN22]

> FN14. *Robinson v. Benton,* 842 So.2d 631, 637 (Ala.2002).

> FN15. *Noble v. Bruce,* 709 A.2d 1264, 1275 (Md.1998).

> FN16. *Lilyhorn v. Dier,* 335 N.W.2d 554, 555 (Neb.1983).

> FN17. *Simon v. Zipperstein,* 512 N.E.2d 636, 638 (Ohio 1987).

> FN18. *Barcelo,* 927 S.W.2d 28, 30-31.

> FN19. *Viscardi v. Lerner,* 510 N.Y.S.2d 183, 185 (N.Y.App.Div.1986).

> FN20. Feinman at 737.

> FN21. 991 S.W.2d 787 (Tex.1999).

> FN22. *McCamish,* 991 S.W.2d at 791; *see also* Jason D. Pinkall, *From Barcelo to McCamish: A Call to Relax the Privity Barrier in the Estate-Planning Context in Texas,* 37 Hous. L. Rev . 1275 (2000).

In the estate planning context, an attorney is usually sued by a disappointed heir or intended beneficiary rather than the client's estate. The client's death often triggers the action.[FN23] The client's injury, if discovered in time, is the expense of redrafting the will, whereas the intended beneficiary's loss is the bequest.[FN24] The prevailing rule now is that under some circumstances an intended beneficiary may bring a negligence action against an attorney. Courts rely on various theories, but the vast majority gives at least some beneficiaries standing to sue estate planning attorneys for legal negligence.

> FN23. *See* Cooper & Kidder, *Privity in Estate Planning Malpractice Actions: The Birth, Death and Resurrection of a Concept,* 17 Cumberland L.Rev. 1 (1986).

> FN24. *Heyer v. Flaig,* 449 P.2d 161, 165 (1969).

### B. Non-Privity

California completely abandoned the privity barrier in *Biakanja v. Irving,* [FN25] where a non-lawyer prepared a will and failed to have it witnessed properly. *Biakanja* held that the non-lawyer was liable, despite the lack of privity. *Biakanja* was refined three years later, in 1961, by *Lucas v. Hamm.* [FN26] In *Lucas,* an attorney drafted a trust violating the rule against perpetuities. *Lucas* found that a will's underlying purpose is to benefit the plaintiff

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2004 WL 2827896 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 6

beneficiaries; that the harm to the plaintiffs was foreseeable; and that because the testator had died, the important policy of preventing future harm could only be achieved by extending standing to the beneficiaries. [FN27] *Lucas* acknowledged that liability could be "large and unpredictable," but according to *Lucas,* that concern is outweighed by the perceived need to compensate the injured beneficiary.[FN28] Several jurisdictions, including Washington [FN29] and Kansas [FN30] have adopted California's balancing test, sometimes with minor modifications. [FN31]

FN25. 320 P.2d 16 (Cal.1958).

FN26. 364 P.2d 685 (Cal.1961), *cert. denied,* 368 U.S. 987 (1962).

FN27. *Id.* at 688.

FN28. *Id.* at 688.

FN29. 872 P.2d 1080 (Wash.1994).

FN30. 803 P.2d 42, *modified by* 803 P.2d 205 (Kan.1990).

FN31. Mallen & Smith, § 7.13, at 528 n. 6; *see Donahue v. Shughart, Thomson, & Kilroy,* 900 S.W.2d 624, 627 (Mo.1995)(Modifying California's balancing test).

C. The Restatement (Second) of Contracts

Connecticut,[FN32] Virginia,[FN33] Oregon,[FN34] Michigan [FN35] and most importantly for present purposes, Pennsylvania have adopted the third-party beneficiary rule articulated in § 302 of the Restatement (Second) of Contracts. Until 1983, Pennsylvania required strict privity in order to bring a malpractice action against an attorney who drafted a will. [FN36] In *Guy v. Liederbach,*[FN37] relied on by Plaintiff, a named beneficiary was asked by the drafting attorney to witness the will. This triggered the "interested witness" doctrine, which caused the will to become void. The named beneficiary, who was also the executrix, lost her entire inheritance.[FN38]

FN32. *Stowe v. Smith,* 441 A.2d 81, 83 (Conn.1981).

FN33. *Copenhaver v. Rogers,* 384 S.E.2d 593, 596 (Va.1989).

FN34. *Hale v. Groce,* 744 P.2d 1289, 1292 (Or.1987).

FN35. *Mieras v. DeBona,* 550 N.W.2d 202, 229 (Mich.1996).

FN36. Kelly Burles on Rushin, *Estate Planning Malpractice: Will Alabama Courts Relax the Privity Barrier?,* 52 Ala. L.Rev. 1335, 1338 (2001).

FN37. 459 A.2d 744 (Pa.1983).

FN38. *Id.* at 746.

*7 *Guy* allowed a limited cause of action. Noting the special nature of professional services agreements, *Guy* maintained the privity requirement in tort actions based on negligence. *Guy* held that "plaintiff must show an attorney-client relationship or a specific undertaking by the attorney furnishing professional services as a necessary prerequisite for maintaining such suits in trespass on a theory of negligence." [FN39] In other words, *Guy* adopted strict privity for tort suits against lawyers. And that means Plaintiff does not have standing to bring this malpractice case under Pennsylvania's law.

FN39. *Id.* at 750.

*Guy* does, however, permit recovery in some cases under contract law. *Guy* explains, "The underlying contract is that between the testator ands the attorney for the drafting of a will. The will, providing for one or more named beneficiaries, clearly manifests the intent of the testator to benefit the legatee." [FN40] Thus, as a way to determine standing in contract cases, *Guy* adopts the third-party beneficiary principles in § 302 of the Restatement (Second) of Contracts.

FN40. *Id.* at 750-51.

*Guy* holds that a "named legatee" may sue the drafting attorney as an intended third-party beneficiary of the will. *Guy* limits standing to legatees named as "recipient[s] of all or part of the estate," [FN41] explaining that standing is thus limited to those "where the intent to benefit is clear and the promisee (testator) is unable to enforce the contract." [FN42]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                      Page 7
Not Reported in A.2d, 2004 WL 2827896 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

FN41. *Id.*

FN42. *Id.* at 747.

Section 302 of the Restatement (Second) of Contracts provides a remedy to an intended beneficiary if recognizing the beneficiary's right is "appropriate to effectuate the intention of the parties," and "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." [FN43] *Guy* requires that the testator's intent to benefit the plaintiff appear on the face of the instrument, which allows only the specifically named beneficiary to bring suit.[FN44] This, in turn, also limits the attorney's potential exposure.

FN43. *Guy,* 459 A.2d at 751.

FN44. *Id.* at 750-51.

If Delaware follows Pennsylvania's approach to standing, Plaintiff loses. But other courts have borrowed third-party beneficiary principles, employing them to define an attorney's duty in malpractice cases. For example, in *Pelham v. Griesheimer,*[FN45] plaintiffs brought a malpractice claim against their mother's divorce attorney for failing to notify their father's insurance carrier about the divorce decree. The decree named plaintiffs as the primary beneficiaries. Because of the lawyer's alleged oversight, the insurance proceeds went to the second wife.

FN45. 440 N.E.2d 96, 97 (Ill.1982).

The trial court dismissed for failure to state a claim, finding no privity between plaintiffs and the defendant-attorney. Plaintiffs' complaint was "couched in terms of negligence, not contract." [FN46] Even so, *Pelham* held that "the best approach is that plaintiffs must allege and prove facts demonstrating that they are in the nature of third-party beneficiaries of the relationship between the client and the attorney in order to recover in tort." [FN47] *Pelham* explained: "Analogizing the scope of the duty to the concept of third-party direct beneficiary serves the purpose of limiting the scope of the duty owed by an attorney to nonclients." [FN48] Ultimately, the plaintiff-children lost in *Pelham.* Although they had standing, the defendant-lawyer was deemed to have had no duty to his client's children. The lawyer was hired in connection with the mother's divorce, "not to represent her children's interest." [FN49]

FN46. *Id.* at 98.

FN47. *Id.* at 99.

FN48. *Id.* at 100.

FN49. *Pelham v. Griesheimer,* 440 NE 2nd 96, 101 (Del.1982).

*8 Third-party beneficiary jurisdictions effectively limit liability to a smaller beneficiary class and thus present less challenging proof issues; the beneficiary must at least be named in the testamentary instrument. These jurisdictions focus on protecting the attorney-client relationship between attorney and testator, and do not interfere with attorneys' loyalty to their clients.

For example, in *Krawcyz v. Stingle,*[FN50] the intended beneficiaries sued the testator's attorney because the testator died without signing the trust instruments. The Connecticut Supreme Court held that the intended beneficiaries could not hold the attorney liable for the delay in executing the trust instruments.[FN51] *Krawcyz* reasoned that permitting such a suit "would not comport with a lawyer's duty of undivided loyalty to the client." [FN52]

FN50. 543 A.2d 733 (Conn.1988).

FN51. *Id.* at 736.

FN52. *Id.*

The court is unwilling to abandon privity outright in Delaware. Privity discourages grave robbing, it gives estates repose and it eliminates courtroom seances. Strict privity, however, invites overly harsh results. Lawyers are not entitled to bury their mistakes. Where a testator's intent is apparent on the face of a testamentary instrument and the bequest fails solely due to the scrivener's drafting, a disappointed heir should be allowed to proceed against the scrivener in contract and, perhaps, tort. Where the drafting is correct, yet the bequest fails for other reasons, the disappointed heir must allege facts that irrefutably lay the bequest's failure at the scrivener's door. Plaintiff's allegations fall short.

VI.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                Page 8
Not Reported in A.2d, 2004 WL 2827896 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

In this case, Plaintiff's Complaint contains one count: Plaintiff alleges that "Defendant knew or should have known that Plaintiff was an intended third-party beneficiary of decedent's Will and Trust ." [FN53] In his Post Trial Brief, Plaintiff insists that "there can be no doubt that Plaintiff is a classic example of what an intended 'donee beneficiary' is." [FN54] Plaintiff alleges further that Defendant owed Plaintiff, "as an intended third-party beneficiary ... the applicable standard of care required of lawyers engaged in estate planning." [FN55] This duty, according to Plaintiff, includes "ensur[ing] that Plaintiff was to receive the distribution provided for in the Trust." [FN56] Plaintiff alleges, finally, that Defendant "deviated from the applicable standard of care" and that, "[a]s a result and direct proximate cause of the Defendant's negligence, Plaintiff was damaged in that he failed to receive the full share of the Decedent's estate as intended by the Decedent." [FN57] Accordingly, the Complaint sounds in tort, not contract.

> FN53. Pl. Compl., D.I. 1, ¶ 23, at 4.
>
> FN54. Pl. Post Trial Br., D.I. 48, at 7.
>
> FN55. *Id.* at ¶ 25, at 4.
>
> FN56. *Id.* at ¶ 24, at 4.
>
> FN57. *Id.* at ¶ ¶ 26-27, at 5.

The settlor's original, testamentary intent was clear enough. It is undisputed that Jeanne intended to create a trust for Plaintiff. And it is equally undisputed that Defendant drafted a trust agreement reflecting the settlor's original intent. The bequest undeniably failed because the settlor's money went elsewhere. Although the court appreciates that, in theory, the estate could have been restructured to fund Plaintiff's share of the trust, the settlor would have had to hire Plaintiff, or someone else, to review her financial situation. Then she would have had to agree to divert money from elsewhere. And although the court further appreciates that Defendant's alleged negligence may have contributed to the settlor's failure to discover and correct her misimpression about her assets, Plaintiff's position nonetheless creates a series of "what ifs" involving someone who has passed on. This goes to the heart of the concerns favoring a privity requirement, and mandates the outcome here.

VII.

*9 As just discussed, the court should have dismissed the case on the pleadings. Plaintiff failed to state a claim under Delaware's or Pennsylvania's law. Nevertheless, the parties created a complete record and from the record the court also is satisfied that Plaintiff loses on the merits.

Both sides offer a legal expert's opinion as to the standard of care owed by a lawyer in Defendant's place. Plaintiff relies on a Pennsylvania expert to prove that Defendant failed in several ways to meet the standard of care. Specifically, Defendant allegedly failed: to advise the settlor that she needed to change the beneficiary on her IRA "or provide alternative funding"; to do all Defendant could to obtain financial information in connection with the work Defendant did; to make the settlor "aware" that her goals might not be met because Defendant did not have enough information; and to "put in writing" any warning he gave "so the woman could see it and understand that there could be a problem here."

Defendant questions Plaintiff's expert's competence because the expert is not a member of the Delaware Bar and because of his unfamiliarity with the standard of care in Delaware. Defendant seems to assume that Plaintiff is proceeding under Delaware's law. Plaintiff counters that: Defendant is a Pennsylvania attorney; settlor was a Pennsylvania resident; she received Defendant's advice in Pennsylvania; and the trust documents provide that they are governed by the laws of Pennsylvania. According to Plaintiff, balancing Pennsylvania's and Delaware's interests in the outcome here leads to the result: "Pennsylvania 10 and Delaware 0."

As discussed above, Defendant is not only a Pennsylvania attorney, he also is a Delaware attorney; he was in Delaware when he advised settlor; and he is appearing in a Delaware courtroom. All of which gives Delaware an interest in the case that certainly exceeds "0," as Plaintiff insists.

More importantly, Plaintiff's reliance on the case's Pennsylvania ties is double-edged. As discussed above, Defendant's duty of care under Pennsylvania's law does not extend to third-party beneficiaries, including Plaintiff. Thus, Plaintiff has no tort case against Defendant under established Pennsylvania law. Based on this case's facts, Plaintiff's only chance is in Delaware. Yet, Plaintiff is unprepared to prove his case under Delaware's law.

Even if Defendant could solve the choice of laws

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                 Page 9
Not Reported in A.2d, 2004 WL 2827896 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

conundrum, he bears the burden of proof. Despite the fact their opinions are largely *sui generis,* both experts have credibility. Plaintiff's expert acknowledged that the Supplemental Declaration of Trust was a "very fine document." Defendant successfully set up a trust, and Plaintiff received a settlement ($118,250) from the trust. Testator's actual estate was unaffected by Defendant's suggested negligence; there were no additional taxes or administrative fees diminishing her estate incurred as a result of attorney error.

**\*10** Nevertheless, Plaintiff argues that Defendant had a duty to verify the testamentary assets to ensure that they were enough to fund the trust corpus and fulfill the bequest. Alternatively, Plaintiff argues that Defendant breached his duty by failing to caution Jeanne that the modified trust might not accomplish her desired $250,000 bequest if her assets were insufficient.

If the case boiled down to a battle of the experts, Defendant would win because Defendant's expert's credentials are better and his opinions are more authoritative, comprehensive and persuasive. Plaintiff did not meet his burden of proof. To the contrary, it appears that Defendant did not violate the standard of care.

Few courts hold that attorneys owe a duty to the beneficiaries to ensure the testamentary assets' sufficiency.[FN58] In the Washington Supreme Court's words:

>    FN58. *See Leak-Gilbert v. Fahle,* 55 P.3d 1054, 1058 (Okl.2002); *Strangland v. Brock,* 747 P.2d 464, 469 (Wash.1987); *Leavenworth v. Mathes,* 661 A.2d 632, 634 (Conn.App.1995).

If we held that [the attorney] had such a duty, we would be expanding the obligation of a lawyer who drafts a will beyond reasonable limits ... an attorney's obligation is to use care to draft the will according to the testator's wishes. Once that duty is accomplished, the attorney has no continuing obligation to monitor the testator's management of his property to ensure that the scheme originally established in the will is maintained. The time and expense that would be required for the attorney to follow all of the testator's activities with respect to his property would prevent the attorney from being able to provide reliable and economical services to that client, and would constitute an overwhelming burden on the attorney's

practice as a whole. [FN59]

>    FN59. *Strangland,* 747 P.2d at 469.

Furthermore, it seems implicit that once Defendant advised the settlor, as he did, that he could not fully review her assets, the common-sense conclusion is that her bequest would fail if she did not have enough money. The court is not convinced that Defendant's failure, if true, to spell out the consequences of the testator's not having enough money amounts to legal negligence, as a matter of law. Defendant's expert's opinion buttresses that conclusion.

It may very well be good practice for a lawyer to "do the arithmetic and project for the client how the estate will be distributed," and thereby show the client "why [he is] unable to afford a legacy to his favorite niece or a handsome bequest to his university." [FN60] The standard for legal negligence, however, is not perfection; rather it is the "exercise the skill and knowledge ordinarily possessed by attorneys under similar circumstances." [FN61] Experts who testify as to the standard of care are familiar with the standard skill and care ordinarily practiced by Delaware attorneys.[FN62] Here, the court is persuaded by Defendant's expert's evaluation that "Mr. Tigani met the standard of care." [FN63] The court agrees that Defendant effectively limited the scope of his representation.[FN64] The court finds that this was an adequate, albeit not ideal, warning to Jeanne Pinckney and that Defendant did not breach his duty or commit negligence as a result. Having met his duty to his client, it follows that Defendant is not liable to Plaintiff.

>    FN60. Jerome A. Manning, Anita S. Rosenbloom, Alan S. Halperin and Seth D. Slotkin, Practising Law Institute, *Manning on Estate Planning* § 1:5 (2003).

>    FN61. Mallen & Smith, § 19.2.

>    FN62. *Brett v. Berkowitz,* 706 A.2d 509, 517-18 (Del.1998).

>    FN63. Dep. of Donald Sparks 12:8 (March 12, 2004).

>    FN64. *Id.* at 17:9-18:3.

>    VIII.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                      Page 10
Not Reported in A.2d, 2004 WL 2827896 (Del.Super.)
**(Cite as: Not Reported in A.2d)**


**\*11** For the foregoing reasons, judgement is entered
for Defendant.

IT IS SO ORDERED.

Del.Super.,2004.
Pinckney v. Tigani
Not Reported in A.2d, 2004 WL 2827896
(Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

<u>**CERTIFICATE OF SERVICE**</u>

I, Jeffrey M. Weiner, Esquire, hereby certify that copies of **Opening Brief of**

**Defendant Bonnie Benson, P.A. in Support of its Motion to Dismiss** were E-served

this 19th day of April, 2007, as follows:

**JOHN H. NEWCOMER, JR., ESQUIRE**
**Morris, James LLP**
**222 Delaware Avenue**
**P.O. Box 2306**
**Wilmington, Delaware 19899**

**BY MAIL:**

**SERGOVIC & ELLIS, P.A.**
**9 North Front Street**
**P.O. Box 875**
**Georgetown, Delaware 19947**

**RICHARD SNYDER**
**23 Harbor Road**
**Rehoboth Beach, Delaware 19971**

**RICHARD SNYDER**
**P.O. Box 374**
**Davidsonville, Maryland 21035**

/s/ JEFFREY M. WEINER, ESQUIRE #403
**JEFFREY M. WEINER, ESQUIRE #403**
**1332 King Street**
**Wilmington, DE 19801**
**(302) 652-0505**
**Counsel for Defendant Bonnie Benson, P.A.**