## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RICHARD SNYDER )
)
      Plaintiff, )
)
  v. )
)
)
GPM2 LLC, CHRISTY MANAGEMENT, )   Case No.: 1:07-cv-00066-GMS
LLC, BONNIE BENSON, P.A., THE )
FELTON BANK OF DELAWARE, JAMES P. )
CONNOR, JR., UNKNOWN TITLE )
INSURANCE COMPANY, and SERGOVIC )
& ELLIS P.A., )
)
      Defendants. )
)

### DEFENDANT GPM2 LLC'S
### OPENING BRIEF IN SUPPORT OF ITS
### <u>MOTION TO DISMISS</u>

Jeremy W. Ryan (Bar No. 4057)
Michael R. Robinson (Bar No. 4452)
**SAUL EWING LLP**
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899-1266
Telephone:   (302) 421-6800
Facsimile:   (302) 421-6813
Email: jryan@saul.com
       mrobinson@saul.com
*Counsel for Defendant GPM2 LLC*

Dated:  April 27, 2007

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................ii

NATURE AND STAGE OF THE PROCEEDINGS ............................................................1

SUMMARY OF ARGUMENT .............................................................................................2

STATEMENT OF RELEVANT FACTS ..............................................................................3

ARGUMENT.........................................................................................................................5

    I.      THE COMPLAINT MUST BE DISMISSED BECAUSE THIS
           COURT LACKS SUBJECT MATTER JURISDICTION. ..........................5

           A.     Diversity Does Not Exist as Plaintiff and Defendants Are
                  Citizens of the Same State. ..............................................................6

           B.     Diversity Jurisdiction Also Fails for Failure to Properly
                  Plead the Jurisdictional Threshold of $75,000 in Damages...............7

           C.     Finally, Jurisdiction Fails for Failure to Properly Invoke a
                  Federal Law or Other Constitutional Basis........................................7

    II.     THE COMPLAINT MUST BE DISMISSED BECAUSE IT
           FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE
           GRANTED. ..............................................................................................8

CONCLUSION.......................................................................................................................8

# TABLE OF AUTHORITIES

## CASES

*Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256 (3d Cir. 2006)......................................................4

*Buckley v. O'Hanlon*, 2007 WL 956947 (D. Del. Mar. 30, 2007) ...................................................5

*County of Delaware v. Gov't Systems, Inc.*, 230 F. Supp. 2d 592 (E.D. Pa. 2002) ........................7

*Floyd v. Saturn of Newark*, 2005 WL 1657119 (D. Del. July 11, 2005) ....................................6, 7

*Gully v. First Nat. Bank in Meridian*, 299 U.S. 109, 57 S. Ct. 96, 81 L. Ed. 70 (1936) ................7

*Holmes v. Sopuch*, 639 F.2d 431 (8th Cir. 1981).............................................................................6

*In Re Corestates Trust Fee Litig.*, 837 F. Supp. 104 (E.D.Pa.1993),
    *aff'd* 39 F.3d 61 (3d Cir.1994) ...............................................................................................5

*Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088 (9th Cir. 1983)................................................6

*Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972) ..................................................................6

*LeBlanc v. Cleveland*, 248 F.3d 95 (2d Cir. 2001) .........................................................................6

*Licata v. United States Postal Serv.*, 33 F.3d 259 (3d Cir.1994).....................................................5

*McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S. Ct. 780 (1936).......................6

*Pryor v. National Collegiate Athletic Ass'n*, 288 F.3d 548 (3d Cir. 2002)....................................3

*Smith v. Delaware First Fed. Credit Union*, 395 F. Supp. 2d 127 (D. Del. 2005).....................5, 7

*Turicentro, S.A. v. American Airlines Inc.*, 303 F.3d 293 (3d Cir.2002)........................................5

## STATUTES

28 U.S.C. § 1331.................................................................................................................................7

28 U.S.C. § 1332.................................................................................................................................6

## NATURE AND STAGE OF THE PROCEEDINGS

Richard Snyder ("Plaintiff" or "Mr. Snyder") filed his complaint in the United States District Court for the District of Delaware on February 2, 2007. (D.I. 1.) Although Mr. Snyder does not affirmatively state the basis of invoking the jurisdiction of a federal court, he indicates that he lives in Rehoboth Beach, Delaware, that the nature of the federal question is a "breach of contract" and that he is suing for specific performance or damages under a purchase and sale agreement dated October 25, 2005 (hereinafter the "Contract"). Defendant GPM2 LLC, a Delaware limited liability company ("GPM"), was served with a Summons and copy of the complaint against it on March 29, 2007. (D.I. 14).

Contemporaneously herewith, GPM is filing its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) (hereinafter "Rule 12(b)(1)" and "Rule 12(b)(6)", respectively). This is GPM's Opening Brief in Support of its motion.

## SUMMARY OF ARGUMENT

1.    This Court lacks subject matter jurisdiction over this dispute. Mr. Snyder alleges that he is bringing this suit as a breach of contract action – a traditional state law claim. Mr. Snyder also indicates that he lives in Rehoboth Beach, Delaware, and that he is seeking either specific performance of the contract or the return of $25,000 (and an undetermined amount of other damages). The defendants in this action are all citizens of the State of Delaware, and the terms of the Contract at issue in this lawsuit indicate that the $25,000 deposit would be the sole amount of liquidated damages available.

2.    Mr. Snyder's complaint fails to state a claim upon which relief can be granted by this Court. The Contract at issue in this action required that the sale of the subject property was to occur by December 5, 2005 and that time was of the essence. Mr. Snyder failed to timely perform his obligations under the Contract. Thus, Mr. Snyder cannot state a claim for breach of a Contract that he, himself, has terminated.

## STATEMENT OF RELEVANT FACTS

Mr. Snyder entered into a contract to purchase real estate dated October 25, 2005. (Compl. ¶2.) The contract was entered into with GPM for which GPM was to sell and Mr. Snyder was to purchase certain real property in Sussex County, Delaware. (See Contract, Recitals)[1].

The Contract required that the closing of the sale must occur "on or before December 5, 2005" with time being of the essence (Contract at 3.02.) The closing did not occur on or before December 5, 2005, as indicated by Plaintiff's recording the Contract in the land records of Sussex County eight months later (Compl. ¶2) and GPM's sale of the property to defendant Christy Management, LLC. in December 2006. (Compl. ¶3).

The Contract also required Mr. Snyder to make a deposit of $25,000 to be held either to be:

1.    applied toward the purchase price of the property at closing. (Contract at 1.05.)

2.    returned to Mr. Snyder in the event GPM breached the Contract (*Id.* at 3.07); or

3.    kept by GPM in the event Mr. Snyder defaulted in his performance under the Contract. (*Id.*)

The parties to the Contract agreed that no interest would accrue or be earned on the deposit. (*Id.* at 1.05). The deposit continues to be held. (Compl. ¶8.)

---

[1]    A true and correct copy of the Contract is attached as Exhibit A to the Opening Brief in support of defendant Christy Management, LLC's motion to dismiss. (D.I. 6). It is proper for this Court to consider the contents of the Contract in deciding the pending motions to dismiss as the Contract is referred to in the plaintiff's complaint and its terms are central to the claims at issue in this action. *See Pryor v. National Collegiate Athletic Ass'n,* 288 F.3d 548, 560 (3d Cir. 2002).

Mr. Snyder brought this lawsuit to reinstate the Contract or to obtain damages thereunder. (Compl. ¶9.) The Contract states that $25,000 is the measure of liquidated damaged under the Contract. (Contract at 3.07).

Mr. Snyder indicates that although he has a post office box in Maryland, he resides on Harbor Road in Rehoboth Beach, Delaware. Compl. ¶10. Defendant GPM2 LLC, is a Delaware limited liability company.[2]

GPM sold the subject property to Christy Management, LLC on or about December 21, 2006. (Compl. ¶3).

---

[2]    A true and correct copy of GPM's Entity Information from the State of Delaware's Division of Corporations Online Services is attached hereto as Exhibit A. In deciding a motion to dismiss, a Court may consider "items subject to judicial notice [and] matters of public record." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

## ARGUMENT

"When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *In Re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D.Pa. 1993), *aff'd* 39 F.3d 61 (3d Cir.1994). GPM brings this motion pursuant to Rule 12(b)(1) as well as Rule 12(b)(6). The Court should address the issue of standing first. *Buckley v. O'Hanlon*, 2007 WL 956947, at *2 (D. Del. Mar. 30, 2007).[3] Under either standard, however, this case should be dismissed.

## I.     THE COMPLAINT MUST BE DISMISSED BECAUSE THIS COURT LACKS SUBJECT MATTER JURISDICTION.

Under a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Court "review[s] only whether the allegations on the face of the [C]omplaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court." *Turicentro, S.A. v. American Airlines Inc.*, 303 F.3d 293, 300 (3d Cir.2002) (*quoting Licata v. United States Postal Serv.*, 33 F.3d 259, 260 (3d Cir.1994)).

"There are two primary ways in which a plaintiff may allege subject matter jurisdiction: diversity and federal question." *Smith v. Delaware First Fed. Credit Union*, 395 F. Supp. 2d 127, 131 (D. Del. 2005). Mr. Snyder's allegations fail to sufficiently allege either basis for this Court's jurisdiction, and, thus, his complaint against the defendants must be dismissed.

---

[3]     A copy of unreported decisions are alphabetically attached hereto as Exhibit B.

### A.    Diversity Does Not Exist as Plaintiff and Defendants Are Citizens of the Same State.

Diversity jurisdiction is implicated when the matter in controversy exceeds $75,000 and the dispute involves a diversity of citizenship between the plaintiff on one side and the defendants on the other. *See Floyd v. Saturn of Newark*, 2005 WL 1657119, at *2 (D. Del. July 11, 2005). Plaintiff has failed to plead that this Court has subject matter jurisdiction over this matter due to the diversity of citizenship among the parties. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 186, 56 S. Ct. 780, 784 (1936) (the burden is on the plaintiff to plead and prove jurisdictional facts). Federal diversity jurisdiction requires that all parties to an action be citizens of different states. 28 U.S.C. § 1332(a). Corporations are deemed to be citizens of the state in which they are incorporated. 28 U.S.C. § 1332(c)(1). GPM is a Delaware limited liability company, and, thus, is a citizen of the State of Delaware.

The test for citizenship of natural persons is the site of domicile for that person. *Holmes v. Sopuch*, 639 F.2d 431 (8th Cir. 1981). The domicile of the parties is to be determined at the time a complaint is filed. *See Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972). A party's residence is "prima facie" evidence of domicile. *Id.* In the complaint, Mr. Snyder indicates that his residence is on Harbor Road in Rehoboth Beach, Delaware. He provides no other basis on which the Court may determine his domicile other than a post office box. Thus, Mr. Snyder is also a citizen of Delaware. As there is no diversity of citizenship between GPM and Mr. Snyder, Mr. Snyder has failed to avail himself of the diversity jurisdiction of this Court.

**B.**     **Diversity Jurisdiction Also Fails for Failure to Properly Plead the Jurisdictional Threshold of $75,000 in Damages.**

Even if Mr. Snyder were a citizen of the State of Maryland (or other state), he has not properly pled diversity jurisdiction. Mr. Snyder indicates that he is entitled to a return of the $25,000 deposit, and an undetermined amount of punitive damages. (Compl. ¶8). In fact, the parties to the Contract agreed that as to Mr. Snyder, return of the deposit is his "sole remedy." (Contract at 3.07). $25,000, then, is the most Mr. Snyder could be awarded in this action. Thus, the complaint should be dismissed based on failure to sufficiently allege the jurisdictional amount. *Floyd* 2005 WL 1657119, at *2.

**C.**     **Finally, Jurisdiction Fails for Failure to Properly Invoke a Federal Law or Other Constitutional Basis.**

Plaintiff indicates on the docket and information statement that the basis of this Court's jurisdiction is a federal question, and then indicates that the federal question is as to a breach of contract. For this Court "to assert jurisdiction over a case based on federal question, the Constitution, laws or treaties of the United States must supply an essential element of the plaintiff's cause of action." *County of Delaware v. Gov't Systems, Inc.*, 230 F. Supp. 2d 592, 596 (E.D. Pa. 2002), citing *Gully v. First Nat. Bank in Meridian*, 299 U.S. 109, 112, 57 S. Ct. 96, 81 L. Ed. 70 (1936). Questions regarding breach of contract are quintessential state court matters. *See Floyd*, 2005 WL 1657119, at *6-7; *Smith*, 395 F. Supp. 2d at 131-32. A breach of contract claim, in fact, provides "*no basis for federal court jurisdiction.*" *County of Delaware*, 230 F. Supp. 2d at 598 (emphasis added). Thus, Mr. Snyder has failed to properly invoke this Court's jurisdiction under 28 U.S.C. § 1331.

## II.    THE COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

GPM by this reference pursuant to Fed. R. Civ. P. 10(c) hereby adopts, as if fully set forth herein, Argument II from the Opening Brief of Defendant Christy Management in support of its motion to dismiss. (D.I. 6).

## CONCLUSION

For the foregoing reasons, Defendant GPM2 LLC respectfully requests that the Court grant its motion to dismiss the Complaint with prejudice. Plaintiff has failed to carry its burden to invoke the jurisdiction of this Court as: (i) all parties are citizens of the same state – Delaware; (ii) this controversy is for less than $75,000; and (iii) a breach of contract action does not implicate federal laws or the United States Constitution. Further, for the reasons stated in defendant Christy Management's motion to dismiss and opening brief in support thereof, Mr. Snyder has failed to state a claim upon which relief can be granted by this Court as Mr. Snyder, as a party to the Contract at issue in this action, failed to timely close the transaction. Thus, the Contract expired by its own terms.

Dated:  April 27, 2007

Jeremy W. Ryan (Bar No. 4057)
Michael R. Robinson (Bar No. 4452)
**SAUL EWING LLP**
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE  19899-1266
Telephone:    (302) 421-6800
Facsimile:    (302) 421-6813
Email: jryan@saul.com
          mrobinson@saul.com

*Counsel for Defendant GPM2 LLC*

# EXHIBIT A



# State of Delaware
The Official Website for the First State



| Visit the Governor | General Assembly | Courts | Other Elected Officials | Federal, State & L |

| State Directory | Help | Search Delaware | | | Citizen Services | Business Services | |

**Department of State: Division of Corporations**

**HOME**
About Agency
Secretary's Letter
Newsroom
Frequent Questions
Related Links
Contact Us
Office Location

**SERVICES**
Pay Taxes
File UCC's
Delaware Laws Online
Name Reservation
General Information
Status
Validate Certificate

**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and Fees
UCC Searches
Taxes
Expedited Services
Service of Process
Registered Agents
Get Corporate Status
Submitting a Request

Frequently Asked Questions   View Search Results

## Entity Details

### THIS IS NOT A STATEMENT OF GOOD STANDING

| | | | |
|---|---|---|---|
| File Number: | **3595451** | Incorporation Date / Formation Date: | **11/26/2002** (mm/dd/yyyy) |
| Entity Name: | **GPM2, LLC** | | |
| Entity Kind: | **LIMITED LIABILITY COMPANY (LLC)** | Entity Type: | **GENERAL** |
| Residency: | **DOMESTIC** | State: | **DE** |

**REGISTERED AGENT INFORMATION**

| | |
|---|---|
| Name: | **NATIONAL REGISTERED AGENTS, INC.** |
| Address: | **160 GREENTREE DRIVE SUITE 101** |
| City: | **DOVER**   County: **KENT** |
| State: | **DE**   Postal Code: **19904** |
| Phone: | **(302)674-4089** |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status,Tax & History Information   Submit

Back to Entity Search

To contact a Delaware Online Agent click here.

| site map | about this site | contact us | translate | delaware.gov |

# EXHIBIT B

Westlaw.

Slip Copy

Page 1

Slip Copy, 2007 WL 956947 (D.Del.)
**(Cite as: Slip Copy)**

Buckley v. O'Hanlon
D.Del.,2007.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Dennis J. BUCKLEY, as Trustee of the DVI
Liquidating Trust Plaintiff,
v.
Michael A. O'HANLON, Steven R. Garfinkel,
Richard E. Miller, John P. Boyle, Anthony J. Turek,
Raymond D. Fear, William S. Goldberg, Gerald D.
Cohn, John E. McHugh, Harry T.J. Roberts, and
Nathan Shapiro, Defendants.
**No. 04-955GMS.**

March 28, 2007.

Francis A. Monaco, Jr., Joseph J. Bodnar, Monzack
& Monaco, P.A., Wilmington, DE, for Plaintiff.
Dennis J. Buckley, pro se.
David E. Brand, Prickett, Jones & Elliott, P.A.,
David A. Felice, Cozen O'Connor, Arthur G.
Connolly, Jr., Connolly, Bove, Lodge & Hutz,
Joanne Ceballos, Adam L. Balick, Bifferato
Gentilotti Biden & Balick, Martin James Weis,
Dilworth Paxson LLP, Wilmington, DE, Gregory P.
Miller, Michael A. Morse, Miller, Alfano &
Raspanti, P.C., Philadelphia, PA, for Defendants.

*MEMORANDUM*

SLEET, J.

## I. INTRODUCTION

*1 The Official Committee of Unsecured Creditors
of DVI, Inc. (the "Committee") filed this action on
August 19, 2004. The Committee was dissolved,
and Dennis J. Buckley was appointed as Trustee for
the DVI Liquidating Trust ("Buckley") by order of
the United States Bankruptcy Court for the District
of Delaware (the "Bankruptcy Court") on
November 24, 2004. Buckley was substituted as
plaintiff in this action in this court's Order of April

6, 2006. The complaint states claims for breach of
fiduciary duty and deepening insolvency as to the
officer defendants (Michael A. O'Hanlon, Steven R.
Garfinkel, Richard E. Miller, John P. Boyle,
Anthony J. Turek, and Raymond D. Fear) and the
director    defendants/audit    committee    members
(O'Hanlon, William S. Goldberg, Gerald D. Cohn,
John E. McHugh, Harry T.J. Roberts, and Nathan
Shapiro). The complaint also includes a claim for
fraud as to O'Hanlon, Garfinkel, and Miller.
Presently before the court are eight motions to
dismiss.

## II. LEGAL STANDARD

Pursuant to the motion of a party, a court may
dismiss a complaint for failure to state a claim upon
which relief can be granted. Fed.R.Civ.P. 12(b)(6).
In making this determination, the court must accept
as true all allegations in the complaint, and must
draw all reasonable inferences in the light most
favorable to the plaintiff. *Trump Hotels & Casino
Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478,
483 (3d Cir.1998). The defendant must show "
beyond doubt" that the plaintiff can prove no set of
facts which would entitle him to relief. *Conley v.
Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d
80 (1957).

## III. BACKGROUND [FN1]

> FN1. This section is a summary of facts,
> taken from the pleadings, and do not
> constitute findings of fact.

DVI and its subsidiaries are Delaware corporations
with principal places of business in Pennsylvania.
(D.I.1, ¶ 11.) Prior to filing for bankruptcy, DVI
extended lease and loan financing to healthcare
providers to facilitate the purchase of sophisticated
medical equipment, and extended revolving lines of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

credit that were secured by liens on accounts receivable generated by that provider's operations. (D.I.1, ¶¶ 13-15.) To raise capital and maintain their lines of credit, DVI used a securitization system, through which financial contracts were pledged as collateral to lenders. (D.I.1, ¶ 33.) Recognizing losses or establishing reserves on underperforming contracts would have negatively affected the securitization system, so although the payment histories of impaired leases and loans worsened in the years leading up to DVI's, DVI's loss reserves and level of write-offs for bad credit remained fairly static. (D.I.1, ¶ 39.) By 1999, DVI began experiencing shortages of capital, so the defendants used irregular financial practices to make ends meet while at the same time investing large amounts of cash in ill-performing markets and non-core businesses. (D.I.1, ¶ 54.) Defendants O'Hanlon, Garfinkel, and Miller were allegedly the first to implement such practices, as they had access to DVI's record keeping software. Apparently, the other defendants discovered, ignored, or participated in the practices. (D.I.1, ¶¶ 92-100.)

*2 The plaintiff alleges that, to maintain the appearance of solvency, the defendants injured DVI and its creditors by repurchasing delinquent loans and leases without receiving commensurate value, and transferring funds within DVI's subsidiaries and among select borrowers to disguise underperforming accounts. (D.I.1, ¶¶ 60-68.) Other irregular practices that the defendants are alleged to have committed include investing substantial amounts of money in consistently unprofitable or non-core businesses, obtaining otherwise-unavailable lines of credit by pledging the same collateral to several lenders, ignoring internal controls and reporting procedures, and disregarding numerous warnings from DVI's outside auditor and the SEC. (*Id.*) The independent auditor resigned in June 2003 after refusing to approve DVI's Form 10-Q for the quarterly period ending March 31, 2003. DVI also began defaulting on its loans in June 2003, and ultimately filed for bankruptcy on August 25, 2003. (D.I.1, ¶ 57.)

## IV. DISCUSSION

"When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *In Re Corestates Trust Fee Litig.,* 837 F.Supp. 104, 105 (E.D.Pa.1993), *aff'd* 39 F.3d 61 (3d Cir.1994). " Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation." *National Org. for Women v. Scheidler,* 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994). Therefore, the court will address the issue of standing first.

### A. Standing

Defendant Roberts posits that the causes of action pursued in the complaint are beyond the scope of the remedies contemplated by the statutory predicates cited in the Motion to Authorize Official Committee of Unsecured Creditors to Investigate and Pursue Causes of Action Against Pre-Petition Officers and Directors. In the May 10, 2004 Order approving that motion, however, the Bankruptcy Court authorized the Debtors to "investigate, and, if appropriate, pursue, *any causes of action* of the Debtors' estates against the Defendants." (D.I.27, Ex. A) (emphasis added). Whether this Order granted to the Committee greater authority than the Committee requested is immaterial; the court had the power to do so. The plain language of the Bankruptcy Court's Order makes clear that Buckley has standing to assert claims on behalf of DVI's debtors.

Other defendants argue that Buckley cannot bring claims on behalf of the creditors because the Committee had standing as to the debtors only. In support of their argument, the defendants rely on the Supreme Court's decision in *Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 434, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), wherein the Court held that a trustee in bankruptcy does not have standing to pursue claims on behalf of creditors of the debtor company's estate. In response, Buckley argues that, as trustee, it is empowered to pursue claims on behalf of the debtors' creditors because the Bankruptcy Court

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 956947 (D.Del.)
**(Cite as: Slip Copy)**

confirmed the assignment of the creditors' claims to the trustee under the provisions of the Plan and Confirmation Order, dated November 24, 2004.

**\*3** While the court acknowledges that, in theory, a bankruptcy trustee can pursue claims that the debtors' creditors assigned to it, a plaintiff must have standing to pursue its claims at the time of filing. *See Minneapolis & St. Louis R.R. Co. v. Peoria & Pekin Union Ry. Co.,* 270 U.S. 580, 586, 46 S.Ct. 402, 70 L.Ed. 743 (1926) ("The jurisdiction of the lower court depends upon the state of things existing at the time the suit was brought."). Here, the complaint was filed in August 2004 but the trustee did not obtain an assignment of rights from a subset of creditors until four months later, in December 2004, when the Bankruptcy Court's Plan and Confirmation Order became effective. Moreover, since that Order, Buckley has not sought to supplement the existing complaint.

The court will not proceed with claims for which the plaintiff obtained standing after the lawsuit was filed. As Judge Longobardi so aptly stated in *Procter & Gamble Co. v. Paragon Trade Brands, Inc.:*

As a general matter, parties should possess rights before seeking to have them vindicated in court. Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue. Parties could justify the premature initiation of an action by averring to the court that their standing through assignment is imminent. Permitting non-owners and licensees the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation, and provide incentives for parties to obtain assignments in order to expand their arsenal and the scope of litigation. Inevitably, delay and expense would be the order of the day.

917 F.Supp. 305, 310 (D.Del.1995) (*quoted in Gaia Technologies, Inc. v. Reconversion Technologies, Inc.,* 93 F.3d 774, 780 (Fed.Cir.1996), *as amended on rehearing,* 104 F.3d 1296 (Fed.Cir.1996)). The court will dismiss, without prejudice, any claims Buckley asserts on behalf of the debtors' creditors.

### B. Breach of Fiduciary Duty Claim

Delaware law provides that corporate officers and directors owe the corporation a triad of fiduciary duties: loyalty, good faith, and due care. *McMullin v. Beran,* 765 A.2d 910, 917 (Del.2000). To state a claim for breach of fiduciary duty, a plaintiff may allege that the officers and directors of a company knew or should have known that violations of the law were occurring, that they took no good faith steps to ameliorate the situation, and that the company suffered losses as a result.[FN2] *In re Caremark Intern. Inc. Deriv. Lit.,* 698 A.2d 959, 971 (Del.Ch.1996) (stating that liability may be based upon either an ill-advised or negligent decision, or an unconsidered failure to act when due attention would arguably have prevented the loss). The Court of Chancery later elaborated on what constitutes such an ill-advised decision in *Guttman v. Huang,* 823 A.2d 492, 507 (Del.Ch.2003) (listing as an example "that the audit committee had clear notice of serious accounting irregularities and simply chose to ignore them or, even worse, to encourage their continuation").

> FN2. Delaware law provides that fiduciary duties are owed to a corporation by both officers and directors. *Arnold v. Soc'y for Savings Bancorp, Inc.,* 678 A.2d 533, 539 (Del.1996). Therefore, to the extent that cases cited in this memorandum refer only to one of these groups, the court will consider them as applicable to both.

**\*4** Buckley alleges that the defendants either knew or should have known that violations of law were occurring, that they took no good faith steps to ameliorate the situation, and that DVI and its creditors suffered damages. Buckley also alleges that the officer defendants perpetuated an array of irregular accounting practices, of which the director defendants were aware, and which they ignored. All of the director defendants were alleged to be members of DVI's audit committee. Buckley's complaint is consistent with the *Guttman* pleading example, in that it alleges that the officer defendants eliminated the Criticized Asset Reporting system and manipulated delinquent loans and leases to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 956947 (D.Del.)
**(Cite as: Slip Copy)**

make them appear profitable. Also, as in *Guttman,* Buckley alleges that the audit committee received eleven warning letters over eight years from their independent auditor, and that the auditor resigned after no action was taken in response to the alert. Buckley further avers that a series of inquiries from the SEC were also ignored by both the audit committee and the board of directors.

Several of the defendants have attempted to analogize the facts in this case to those in *Guttman* because the Court of Chancery viewed that plaintiff's allegations as overly conclusory. In *Guttman,* however, the complaint made sweeping accusations regarding accounting irregularities without discussing how management was expected to be aware of the problem, or even the presence of an audit committee. Here, the court finds that the contents of Buckley's complaint dictate a different result.

The defendants also challenge Buckley's claim for breach of fiduciary duty by disputing many of the substantive contentions. For example, several state that they lacked knowledge or notice of the accounting irregularities, that they held their relevant positions for only a portion of the time in which DVI allegedly was put on notice of the irregularities, that they immediately attempted to rectify the situation upon learning of the problem, that the letters sent by DVI's outside auditor or the SEC could not be expected to alert them to the problems, or that the Examiner's Report painted a different picture of the internal workings of DVI. These responses address, however, the substantive merits of Buckley's claim. Because Buckley's allegations are accepted as true for the purposes of these motions, such factual disputes are not appropriately resolved on motions to dismiss. Rather, the court must focus its consideration on the sufficiency of the complaint.

1. Sufficiency of Pleading

Several of the defendants insist that, because they are not mentioned individually in many of Buckley's allegations, the claims are too broad to proceed. " When group pleading is utilized by a plaintiff 'the

identification of the individual sources of statements is unnecessary when the fraud allegations arise from the misstatements or omissions in group-published documents, such as annual reports, prospectuses, registration statements, press releases or other group-published information that presumably constitute the collective actions of those individuals involved in the day-to-day affairs of the corporation. " ' *Tracinda Corp. v. DaimlerChrysler AG,* 197 F.Supp.2d 42, 85 (D.Del.2002) (citations and internal quotations omitted). Therefore, group pleading may be sufficient in some circumstances.

**\*5** Defendant Roberts argues that breach of fiduciary duty claims must satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b). Such an assertion is correct when the allegations of breach of fiduciary duty sound in fraud. *ePlus Group v. Panoramic Communications, Inc.,* No. 02-7992, 2003 WL 21512229 at \*2 (S.D.N.Y. July 2, 2003). However, in the absence of such allegations, Rule 9(b) does not apply. *In re Fruehauf Trailer Corp.,* 250 B.R. 168, 197 (D.Del.2000) (stating that the heightened pleading requirement generally does not apply to state law claims for breach of fiduciary duty). In *Fruehauf,* Rule 9(b) was not triggered even in the presence of multiple allegations that the defendant knew or should have known that certain representations were false and misleading. Neither was particularized pleading required when the plaintiff's complaint included such statements as "knew or should have known the financial statements ... misrepresented to System One the Division's financial condition." *In re InaCom Corp.,* No. 00-2426, 2001 WL 1819987 at \*3 (Bankr.D.Del. Aug.7, 2001) (finding the claim did not sound in fraud).

While not all of Buckley's allegations name the involved defendants individually, Buckley did separate the list of defendants into smaller groups who worked together on various committees and boards. Although Buckley frequently refers simply to "defendants" in the body of the complaint, the parties involved in each alleged practice of bad-faith were identified expressly in the introductory paragraphs of Buckley's complaint, and later, in his factual allegations and claims. (D.I.1, ¶¶ 16-28.) The court accepts that Buckley

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

uses the categories of officers and directors merely as substitutes for listing names, rather than using them as sweeping terms to avoid having to associate specific parties to particularized conduct. Wherein much of the alleged conduct involved collective action and decision making, Buckley has sufficiently identified the small groups within DVI and their roles in approving or participating in each alleged bad-faith practice.

The court rejects Defendant Roberts' assertion that Buckley's allegations sound in fraud. Granted, Buckley describes much of the defendants' conduct as intentional or knowing, however, Buckley's choice of terms, which are also seen in fraud claims, do not transform claims for breach of fiduciary duty into claims based in fraud. In fact, the fiduciary duty claims in Buckley's complaint are very similar in structure to what were deemed acceptable fiduciary duty claims in *Fruehauf* and *InaCom*. Buckley's allegations for breach of fiduciary duty, while they must not be conclusory, need not be pled with the particularity required of fraud claims.

### 2. Applicability of Business Judgment Rule

The business judgment rule is a presumption that a board's actions are entitled to deference, because it would be overly harsh to condemn such a decision that only in hindsight was poorly conceived. This presumption is rebutted, however, when a plaintiff pleads particularized facts sufficient to raise a reason to doubt that the action was taken in good faith or on an informed basis. *In re The Walt Disney Co. Deriv. Litig.,* 825 A.2d 275, 286 (Del.Ch.2003). Such doubt is raised when officers and directors fail to be "active monitors of corporate performance," *Caremark,* 698 A.2d at 968 (providing as an example the replacement of a board of directors following the discovery of large losses caused by phantom trades by a prominent trader). Nor may officers and directors consciously disregard visible " red flags." *See Rattner v. Bidzos,* No. 19700, 2003 WL 22284323 at *13 (Del.Ch. Sept.30, 2003). Neither may officers and directors make decisions " so egregious as to constitute corporate waste." *In re Tower Air, Inc.* ., 416 F.3d 229, 238 (3d Cir.2005). The standard for holding officers and directors

liable is one of gross negligence. *Smith v. Van Gorkom,* 488 A.2d 858, 873 (Del.1985).

*\*6 In *Smith,* the decision to approve a proposed merger met that standard because it was made solely on the basis of a twenty-minute presentation. On the other end of the spectrum, gross negligence was not found when directors recommended a merger after consulting financial advisors, meeting several times over a six-week period, and reviewing challenges to the idea. *Rabkin v. Philip A. Hunt Chem. Corp.,* 547 A.2d 963, 970 (Del.Ch.1986) (defining gross negligence as reckless indifference to, or a deliberate disregard of, the stockholders).

Buckley used language similar to that in the above cases in describing defendants' alleged conduct and its results, including allegations of wasting corporate assets, willfully disregarding warnings, and ceasing to review delinquent accounts. Buckley alleges that DVI's officers and directors acted in bad faith, disguising poorly-performing accounts and ignoring the advice of its outside auditor and the inquiries of the SEC. Buckley has satisfied the *Disney* requirement by pleading particularized facts that raise doubts as to whether the officers and directors were acting in good faith.

### 3. Effect of Exculpatory Clause

Several defendants argue that the exculpatory clause in DVI's Certificate of Incorporation, which is based on section 102(b)(7) of the Delaware General Corporation Law, bars the claims against them because it states that no director shall be personally liable to DVI or its stockholders. However, the clause contains exceptions to this protection when a director breaches his duty of loyalty to DVI, or for acts not taken in good faith, involving intentional misconduct, or a knowing violation of law. For example, in *Official Committee of Unsecured Creditors of Integrated Health Serv., Inc. v. Elkins,* such a provision was found not to insulate the directors from liability when they acted with knowing and deliberate indifference by approving a loan program without consideration, deliberation, or advice from an expert. No. 20228, 2004 WL 1949290 at *15 (Del.Ch. Aug.24, 2004). Similarly

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 956947 (D.Del.)
**(Cite as: Slip Copy)**

in *McCall v. Scott,* defendants were not protected by the exculpatory clause when they acted in bad faith by intentionally ignoring "red flags." 250 F.3d 997, 1001 (6th Cir.2001) (finding allegations of " conscious disregard of known risks" to necessarily be conduct undertaken in bad faith).

Buckley's allegations fall into the "bad faith" exception to DVI's Certificate of Incorporation exculpatory clause. Buckley alleges that the defendants here, as was alleged in *Elkins,* acted with "knowing and deliberate indifference," when they stopped examining delinquent accounts. Further, Buckley alleges that the defendants consciously disregarded "red flags," as in *McCall,* when the defendants paid no attention to the warnings allegedly contained in the auditor's and SEC's letters. Buckley has sufficiently pled breach of the duties of loyalty and good faith. As a result, the Certificate of Incorporation cannot operate to insulate the defendants from a breach of fiduciary duty claim. Consequently, the claim will proceed on the merits.

### C. Deepening Insolvency Claim

\*7 To plead insolvency, a plaintiff must aver facts that establish, for pleading purposes, that the corporation had a deficiency of assets below liabilities with no reasonable prospect that the business will succeed, or that it was unable to meet maturing obligations as they fell due in the ordinary course of business. *Production Resources Group, L.L.C. v. NCT Group, Inc.,* 863 A.2d 772, 782 (Del.Ch.2004).

Buckley alleges that financial practices similar to those employed by the debtors in *Production Resources* occurred at DVI. *Id.* at 783-4. Specifically, the complaint avers that DVI had great difficulty raising capital, shuffled delinquent accounts to make them appear healthy, and could only obtain advances from its line of credit by erroneously certifying impaired loans and leases. Buckley expressly alleged that DVI became insolvent in June 2003, when it began defaulting on its loan obligations. Again, here, as in *Production Resources,* it can be reasonably inferred that the

officers' and directors' alleged conduct caused the insolvency. The court thus concludes that Buckley has sufficiently pled that DVI was in the "zone of insolvency."

### 1. Recognition of Deepening Insolvency Claim

The U.S. Bankruptcy Court for the District of Delaware predicted that, in the absence of an opinion by the Delaware Supreme Court and given the Third Circuit's analysis in *Official Committee of Unsecured Creditors v. R.F. Lafferty & Co.,* Delaware law would likely recognize a claim for deepening insolvency. *In re Oakwood Homes Corp.,* 340 B.R. 510, 531 (Bankr.D.Del.2006). Although the elements of such a claim have yet to be enunciated, the Third Circuit acknowledged such a claim when a plaintiff alleges "fraudulent expansion of corporate debt and prolongation of corporate life. " *Official Committee of Unsecured Creditors v. R.F. Lafferty & Co.,* 267 F.3d 340, 347 (3d Cir.2001). A successful claim for deepening insolvency requires a showing of harm to the corporation because of such fraud. *Oakwood Homes,* 340 B.R. at 534 (also explaining that fraud requires a representation of material fact, falsity, scienter, reliance, and injury). In *Oakwood Homes,* fraud was found when the defendants, acting as the debtors' fiduciaries, misrepresented the sustainability of the company's finances with the intent to induce the debtors into maintaining the *status quo,* because it could be inferred from the complaint that such misrepresentation was with knowledge.

Here, as in *Oakwood Homes,* Buckley pled that the defendants, placed in positions of trust and control within DVI, knowingly misrepresented the state of DVI's financial health with the intent to cause DVI to continue incurring more liabilities than it could repay. The defendants allegedly disguised failing accounts and misrepresented DVI's creditworthiness without justification. Rather than constituting a valid attempt to restore DVI to solvency, the defendants' conduct is alleged to have fraudulently expanded DVI's corporate debt and prolonged DVI's life. These allegations, as framed, satisfy the pleading standard observed in *Lafferty.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                      Page 7

Slip Copy, 2007 WL 956947 (D.Del.)
**(Cite as: Slip Copy)**

### 2. Applicability of *In Pari Delicto* Doctrine

**\*8** The doctrine of *in pari delicto* [FN3] provides that "a party is barred from recovering damages if his losses are substantially caused by activities the law forbade him to engage in." *Lafferty,* 267 F.3d at 354 (citations omitted). Under this equitable doctrine, when a plaintiff is "standing in the shoes" of the bankrupt corporation, its claim is barred if the defendants' purported wrongdoing is imputed on the bankrupt corporation itself. *Id.* at 354, 358-59.

> FN3. *In pari delicto* is Latin for "in equal fault." *Black's Law Dictionary* 806 (8th ed.2004).

Whether the *in pari delicto* doctrine applies in this case depends on whether the defendants' conduct can be imputed to the debtors and hence to the Trust, which, under bankruptcy law, stands in the shoes of the debtors. Imputation refers to the attribution of one person's wrongdoing to another person. Under the law of imputation, courts impute the fraud of an officer to a corporation when the officer commits the fraud (1) in the course of his employment, and (2) for the benefit of the corporation. *Id.* at 358.

The defendants' argue that *in pari delicto* serves as a bar to Buckley's deepening insolvency claim because Buckley stands in the shoes of the debtor corporations, seeking relief from the defendants for damages purportedly caused by the debtors' allegedly fraudulent conduct. (D.I.29.) To support this argument, Defendants Boyle and Fear state that the allegations buttressing Buckley's deepening insolvency claim satisfy both prongs of the imputation test. In response, Buckley argues that because the *in pari delicto* doctrine is an affirmative defense, the court should not consider the issue on a motion to dismiss. Further, Buckley contends that if the court reached the merits of whether *in pari delicto* is applicable, the court should find imputation inappropriate because the second prong of the imputation test is not met.

It is generally true that an affirmative defense should not be used to dismiss a plaintiff's complaint

under Rule 12(b)(6). *In re Adams Golf, Inc. Sec. Litig.,* 381 F.3d 267, 277 (3d Cir.2004). That being said, in *Lafferty,* the Third Circuit did affirm a district court's dismissal of a deepening insolvency claim on the basis of the *in pari delicto* doctrine, which the Circuit acknowledged as an affirmative defense. *Lafferty* and *Adams Golf,* however, are not necessarily in conflict. Indeed, dismissal is only appropriate when the plaintiff can prove *no set of facts* that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (emphasis added). In this case, Buckley disputes that the criteria for imputation is met. Specifically, Buckley invokes the adverse interest exception, which provides that fraudulent conduct will not be imputed to the corporation if the fraud was not "for the benefit of the corporation." *Lafferty,* 267 F.3d at 359. As Judge Cowen observed in his *Lafferty* dissent, "an equitable doctrine like *in pari delicto* is highly sensitive to the facts and readily adapted to achieve equitable results." *Lafferty,* 267 F.3d at 362. Simply put, the court finds it premature to bar Buckley's deepening insolvency claim on *in pari delicto* grounds. While it may eventually come to pass that the defense will prevail, the determination will be made on further development of the facts. After considering the pleadings and the positions of the parties, the court is not satisfied that Buckley is unable to prove any facts that would entitle the DVI Liquidating Trust to relief for deepening insolvency.

### 3. Applicability of the Business Judgment Rule

**\*9** In Delaware, there is no general duty to liquidate an insolvent company. *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.,* 906 A.2d 168 (Del.Ch.2004). Similar to the application of the business judgment rule in the fiduciary duty context discussed earlier, it would be harsh to judge the actions of corporate officers and directors, in hindsight, for a failed good-faith attempt to bring a company out of insolvency. Allegations of bad faith, however, also make recovery for deepening insolvency possible under Delaware law. *In re RSL COM PRIMECALL USA, Inc.,* Nos. 01-11457 through 01-11469, 03-2176, 2003 WL 22989669 at \*8 (Bankr.S.D.N.Y. December 11, 2003). If bad faith

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 956947 (D.Del.)
**(Cite as: Slip Copy)**

is alleged, prolongation of operations would "smack of self-dealing, constitute a breach of fiduciary duty, and open up recovery under the theory of deepening insolvency." *In re Global Service Group LLC,* 316 B.R. 451, 465 (Bankr.S.D.N.Y.2004) (requiring a complaint to allege bad faith or fraudulent intent as opposed to mere bad judgment).

As the court has already concluded, Buckley's complaint makes sufficient allegations of bad faith. Buckley stated that, rather than attempting in good faith to revive DVI and avoid liquidation, the defendants disguised the true nature of DVI's finances to obtain more funding with no expectation that such funding would restore DVI to solvency. (D.I.1, ¶ 68.) One can reasonably infer that such activities extend beyond the mere exercise of poor judgment, deemed insufficient in *Global Service.* The court finds that, based on the pleadings, the business judgment rule does not preclude a deepening insolvency claim against the defendants.

### D. Fraud Claim

To state a claim for fraud, a plaintiff must allege that a defendant made a false statement, knowing or recklessly assuming it to be true, with the intent that plaintiff act or refrain from acting in reliance, that plaintiff justifiably relied, and that plaintiff suffered damages. *Kronenberg v. Katz,* 872 A.2d 568, 585 n. 25 (Del.Ch.2004). Allegations of fraud must be pled with particularity. Fed.R.Civ.P. 9(b). Provided that a plaintiff alleges sufficiently particularized allegations, there is no *per se* rule that group pleading cannot satisfy Rule 9(b); otherwise, " sophisticated defrauders" could easily conceal their wrongdoing. *MBIA Ins. Corp. v. Royal Indem. Co.,* 221 F.R.D. 419, 421 (D.Del.2004). The Third Circuit has stated that plaintiffs must plead the circumstances of the alleged fraud such that defendants may be placed on notice; although stating the "date, place, and time" clearly fulfills this requirement, plaintiffs may use any alternative method of "injecting precision and some measure of substantiation" into the allegations of fraud. *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir.1984).

In *Asbestemps, Inc. v. Diversified Energy Group, Inc.,* allegations that defendants represented a corporation as fiscally sound to persuade another company to provide labor were not made verbatim, nor were the time and place identified, but the court found that fraud was properly pled. No. 87-2623, 1987 WL 16662 (E.D.Pa. Sept.9, 1987). Plaintiffs need only provide sufficient factual specificity to provide assurance that they have investigated the alleged fraud and reasonably believe that a wrong has occurred. *Tracinda Corp. v. DaimlerChrysler AG,* 197 F.Supp.2d 42, 54 (D.Del.2002). For example, even absent allegations with respect to the exact factual context or words, a description of the nature and subject matter of the representation was found to be enough in *CFTC v. American Metal Exch.,* 693 F.Supp. 168, 190 (D.N.J.1988).

**\*10** Buckley sufficiently alleges the elements of fraud: that defendants O'Hanlon, Garfinkel, and Miller knowingly misrepresented DVI's financial situation, with the intent to obtain unjustifiable credit, that DVI and its creditors relied on this misinformation, and that it suffered damages to the extent of bankruptcy. As in *CFTC,* Buckley's complaint describes the nature and subject matter of the alleged fraud by asserting that the three defendants intentionally concealed a number of improper accounting practices, ceased normal account monitoring practices, and diverted millions of dollars from DVI when DVI could least afford it. Although Buckley does not state specific dates and places regarding the allegedly fraudulent actions, as in *Asbestemps,* Buckley sufficiently explained the role each defendant (or in some instances, the three defendants acting together) played in each allegedly fraudulent practice in enough detail to satisfy the " injecting precision" standard enunciated in *Seville.*

### V. CONCLUSION

Buckley does not have standing to pursue any claims on behalf of the creditors. As such the court will grant the defendants' motions to dismiss to the extent that they seek relief on behalf of the creditors. The court will deny the defendants' motions to dismiss claims brought on behalf of the debtors.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 9

Slip Copy, 2007 WL 956947 (D.Del.)
**(Cite as: Slip Copy)**


### *ORDER*

For the reasons set forth in the court's memorandum issued contemporaneously herewith, IT IS HEREBY ORDERED that:

1. The Defendants' Motions to Dismiss (D.I. 23, 25, 26, 28, 30, 32, 34, and 36) are hereby GRANTED IN PART and DENIED IN PART.

2. The Plaintiff's Motion for Leave to File an Omnibus Brief (D.I.48) is GRANTED.

D.Del.,2007.
Buckley v. O'Hanlon
Slip Copy, 2007 WL 956947 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 1657119 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**

Floyd v. Saturn of Newark
**D.Del.,2005.**
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Robert T. FLOYD Plaintiff,
v.
SATURN OF NEWARK and General Motors
Acceptance Corporation, Defendants.
**No. Civ.A. 04-944 JJF.**

July 11, 2005.

Robert T. Floyd, Darby, Pennsylvania, Plaintiff, pro
se.
Linda Richenderfer, of Saul Ewing, LLP,
Wilmington, Delaware, and Kimberly A. Manuelides,
and Stacey L. Marktin, of Saul Ewing, LLP,
Baltimore, Maryland, for Defendant General
Motors Acceptance Corporation, of Counsel.
Danielle Yearick, of Tybout, Redfearn & Pell,
Wilmington, Delaware, for Defendant Saturn of
Newark.

*MEMORANDUM OPINION*
FARNAN, J.
*1 Presently before the Court is the Renewed
Motion To Dismiss (D.I.8) filed by Defendant
General Motors Acceptance Corporation ("GMAC"
). For the reasons discussed, the motion will be
granted.

### BACKGROUND

#### I. Factual Background

This lawsuit arises from an automobile lease that
Plaintiff Robert T. Floyd entered into in May 2001
with Defendant GMAC, and his subsequent
purchase of two automobiles from Defendant Saturn
of Newark.

In May 2001, Mr. Floyd leased a red 2001 Saturn
automobile from Saturn of Newark, a car dealership
located in Newark, Delaware. Mr. Floyd entered
into a lease agreement with GMAC, which financed
the lease. Pursuant to the terms of the lease
agreement, the lease was scheduled to terminate in
August 2004 and Mr. Floyd would have an option
to purchase the vehicle at that time. Mr. Floyd
alleges that, in February 2004, he approached a
sales agent at Saturn of Newark with regard to
exercising his right to purchase the leased vehicle.
The sales agent allegedly told Mr. Floyd that the
price was too high. Further, the sales agent
allegedly told Mr. Floyd that, when there were five
remaining months on the lease, GMAC would send
Mr. Floyd a letter excusing the final five lease
payments should Mr. Floyd purchase a new
automobile. Mr. Floyd further alleges that the sales
agent told him that he would not have to worry
about paying for excess mileage on the leased
vehicle.

On May 27, 2004, Mr. Floyd returned to Saturn of
Newark allegedly because only four payments
remained on the lease, yet Mr. Floyd had not
received the letter from GMAC the sales agent
promised. During the May 27 visit, the sales agent
convinced Mr. Floyd to purchase a gold 2004
Saturn automobile, which Mr. Floyd financed
through a loan with Sun Trust bank. Mr. Floyd
turned in the leased 2001 Saturn to Saturn of
Newark at that time. The sales agent then told Mr.
Floyd that he may have to pay for excess mileage
on the leased vehicle.

GMAC subsequently billed Mr. Floyd $3,047 for
excess mileage on the leased vehicle. On June 2,
2004, Mr. Floyd sent a letter to GMAC indicating
his desire to re-acquire the 2001 leased vehicle and
to purchase it at the end of the lease term. On June
3, 2004, Mr. Floyd again wrote to GMAC stating
his belief that he had a legal right to possess the
leased vehicle until August 2004. On June 10, 2004,
GMAC allegedly sent a letter to Mr. Floyd stating

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 1657119 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

that the vehicle had been sold. (D.I. 7 at 3.)

On June 10, 2004, Mr. Floyd returned the gold 2004 automobile to Saturn of Newark. Mr. Floyd alleges that he was subsequently denied credit by other dealerships because the new car loan from Sun Trust bank appeared on his credit report. On June 14, 2004, Mr. Floyd returned to Saturn of Newark and purchased a red 2004 Saturn automobile, again financing it through Sun Trust bank. Mr. Floyd alleges that both Sun Trust loans ran concurrently until the loan for the gold 2004 Saturn "fell into late status," damaging Mr. Floyd's credit rating. (D.I. 7 at 3.)

## II. Procedural History

\*2 On August 16, 2004, Mr. Floyd filed a *pro se* lawsuit against GMAC and Saturn of Newark. The Court construes Mr. Floyd's Complaint (D.I.1) to allege violations of the Truth In Lending Act, 15 U.S.C. § 1601 *et seq.,* the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.,* **breach of contract**, and common law fraud.

On September 7, 2004, GMAC filed a Motion To Dismiss the Complaint pursuant to **Federal** Rule of Civil Procedure **12(b)(6)** (D.I.4). On September 10, 2004, Mr. Floyd filed a "More Definite Statement" (D.I.7) to clarify his claims. In the Statement, Mr. Floyd contends that GMAC is liable to him for **breach of contract** and fraud, and that Saturn of Network is liable to him for the alleged fraudulent conduct of its sales agent. Mr. Floyd seeks damages of $20,000.

In response to Mr. Floyd's Statement, GMAC filed a Renewed Motion To Dismiss pursuant to **Federal** Rules of Civil Procedure **12(b)(1)** and **12(b)(6)**.

## PARTIES' CONTENTIONS

By its motion, GMAC contends that this lawsuit should be dismissed pursuant to **Federal** Rule of Civil Procedure **12(b)(1)** because the court lacks subject matter jurisdiction to hear it. Specifically, GMAC contends that the Court lacks subject matter

jurisdiction based on diversity of citizenship because the amount in controversy is less than $75,000. Further, GMAC contends that the Complaint fails to state a claim under either the Truth in Lending Act or the Equal Credit Opportunity Act and, therefore, the Court lacks **federal** question subject matter jurisdiction over this matter. GMAC further contends that Mr. Floyd has alleged no facts upon which a claim of fraud may be lodged against GMAC and that the common law fraud claim against it should be dismissed pursuant to **Federal** Rule of Civil Procedure **12(b)(6** ).

Mr. Floyd did not file a response to GMAC's motion.

## DISCUSSION

### I. Legal Standard

GMAC moves the Court to dismiss Mr. Floyd's claims against it pursuant to **Federal Rules 12(b)(1)** and **12(b)(6)**.

A motion to dismiss under Rule **12(b)(1)** challenges the jurisdiction of the court to address the merits of the plaintiff's complaint. The motion should be granted where the asserted claim is "insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a **federal** controversy." *Coxson v. Comm. of Pennsylvania,* 935 F.Supp. 624, 626 (W.D.Pa.1996) (citations omitted). Additionally, a motion to dismiss under **12(b)(1)** may present either a facial or factual challenge to subject matter jurisdiction. *See Mortensen v. First Fed. Sav. and Loan,* 549 F.2d 884, 891 (3d Cir.1977). The instant case presents a facial challenge because GMAC does not dispute the existence of the jurisdictional facts alleged in the Complaint. Therefore, the Court must accept the facts alleged in the Complaint as true, and draw all reasonable inferences in favor of Mr. Floyd. *See Zinermon v. Burch,* 494 U.S. 113, 118 (1990); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 3

Not Reported in F.Supp.2d, 2005 WL 1657119 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**\*3** The purpose of a motion to dismiss pursuant to Rule **12(b)(6)** is to test the legal sufficiency of a complaint. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Strum v. Clark,* 835 F.2d 1009, 1011 (3d Cir.1987). In reviewing a motion to dismiss for failure to state a claim, "all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party." *Strum,* 835 F.2d at 1011; *see also Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *Jordan,* 20 F.3d at 1261.

### II. Whether The Court Has Subject Matter Jurisdiction

#### A. *Diversity Of Citizenship*

A **federal** court has subject matter jurisdiction based on diversity of citizenship when "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332 (2005).

In his Complaint (D.I.1), Mr. Floyd alleges that he is a citizen of Pennsylvania, Saturn of Newark is a citizen of Delaware, and GMAC is a citizen of Michigan. GMAC does not dispute Mr. Floyd's allegations with regard to the parties' citizenship. Rather, GMAC contends that the Court lacks diversity jurisdiction because the amount in controversy is less than $75,000.

Accepting the facts alleged in the Complaint as true and drawing all reasonable inferences in favor of Mr. Floyd, as the Court must when analyzing a motion to dismiss, the Court concludes that Mr. Floyd has established diversity of citizenship among the parties. However, Mr. Floyd has not satisfied the jurisdictional amount in controversy. In determining the jurisdictional amount, "the sum

claimed by plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indemnification Co. v. Red Cab Co.,* 303 U.S. 283, 288 (1938). Dismissal is only appropriate if the court is certain that the jurisdictional amount cannot be met and the claims are insubstantial on their face. *In re LifeUSA Holding Inc.,* 242 F.3d 136, 143 (3d Cir.2001). Once the defendant challenges the plaintiff's allegations regarding the amount in controversy, the plaintiff must produce sufficient evidence to satisfy his or her claims related to the jurisdictional amount. *Suber v. Chrysler Corp.,* 104 F.3d 578, 583 (3d Cir.1997).

In this case, Mr. Floyd alleges that he is entitled to $20,000 in damages. (D.I.7.) Thus, Mr. Floyd has not satisfied the $75,000 threshold to support the exercise of diversity jurisdiction. Further, Mr. Floyd has not responded to GMAC's Renewed Motion To Dismiss, and thus, has failed to come forward with facts necessary to support diversity jurisdiction. Accordingly, the Court concludes that Mr. Floyd's allegations fail to support diversity jurisdiction.

#### B. *Federal Question*

**\*4** Pursuant to 28 U.S.C. § 1331, **federal** courts have **federal** question jurisdiction over "cases in which a well pleaded complaint establishes either that **federal** law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of **federal** law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 27-28 (1983).

##### 1. Truth In Lending Act

In his Complaint, Mr. Floyd alleges that "[g]oods leased to consumers are covered by chapter 5 of the Truth in Lending Act and FTC's regulation M...." (D.I. 1 at 2.)

The Consumer Leasing Act ("CLA") was enacted in 1976 as an amendment to the Truth In Lending Act ( "TLA"), 15 U.S.C. § 1601. The CLA extends the TLA's credit disclosure requirements to consumer leases; its primary purpose is to "assure a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 1657119 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

meaningful disclosure of the terms of leases ... so as to enable the lessee to compare more readily the various lease terms available to him." 15 U.S.C. § 1601(b). Because lease financing had become an alternative to credit financing and installment sales contracts, Congress also intended CLA disclosure requirements to "enable comparison of lease terms with credit terms where appropriate." *Id.* The CLA thus requires lessors of personal property to make certain disclosures "in a clear and conspicuous manner" upon entering into a lease. 15 U.S.C. § 1667a. The CLA applies to all leases for the use of " personal property" having a term "exceeding four months" that have a "total contractual obligation not exceeding $25,000." 15 U.S.C. § 1667(1). Neither party disputes that the CLA applies to Mr. Floyd's lease. The statute creates a private right of action against lessors who breach the disclosure requirements. *See* 15 U.S.C. § 1667d; 15 U.S.C. § 1640.

In passing the CLA, Congress also delegated to the **Federal** Reserve Board authority "to issue regulations 'to update and clarify the requirements and definitions applicable to lease disclosures" ' and to publish "model disclosure forms to facilitate compliance with [the statute's] requirements." 15 U.S.C. § 1667f(a)(1), (b)(1). Those regulations, collectively referred to as "Regulation M", are codified at 12 C.F.R. § 213. Courts are to defer to these regulations and associated commentary when interpreting the TLA so long as they are "not irrational." *See Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 560 (1980).

In pertinent part, the CLA requires a lessor to disclose in writing at the inception of a lease:
(4) The amount of other charges payable by the lessee not included in the periodic payments, a description of the charges and that the lessee shall be liable for the differential, if any, between the anticipated fair market value of the leased property and its appraised actual value at the termination of the lease, if the lessee has such liability;
(5) A statement of the amount or method of determining the amount of any liabilities the lease imposes upon the lessee at the end of the term and whether or not the lessee has the option to purchase the leased property and at what price and time;

**\*5** (11) A statement of the conditions under which the lessee or lessor may terminate the lease prior to the end of the term and the amount or method of determining any penalty or other charge for delinquency, default, late payments, or early termination.

15 U.S.C. § 1667a.

Regulation M states in pertinent part that the lessor shall disclose the following information:
(d) Other charges. The total amount of other charges payable to the lessor, itemized by type and amount, that are not included in the periodic payments....
(g) Early termination-
(1) Conditions and disclosure of charges. A statement of the conditions under which the lessee or lessor may terminate the lease prior to the end of the lease term; and the amount or a description of the method for determining the amount of any penalty or other charge for early termination, which must be reasonable....
(h) Maintenance and repair-...
(2) Wear and use standard. A statement of the lessor's standards for wear and use (if any), which must be reasonable; and
(3) Notice of wear and use standard. In a motor-vehicle lease, a notice regarding wear and use substantially similar to the following: " Excessive Wear and Use. You may be charged for excessive wear based on our standards for normal use." The notice shall also specify the amount or method for determining any charge for excess mileage.
(i) Purchase option. A statement of whether or not the lessee has the option to purchase the leased property, and:
(1) End of lease term. If at the end of the lease term, the purchase price; and
(2) During lease term. If prior to the end of the lease term, the purchase price or the method for determining the price and when the lessee may exercise this option.

12 CFR § 213.4.

Viewing the Complaint (D.I.1) and the subsequent " More Definite Statement" (D.I.7) in view of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 1657119 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

CLA and Regulation M, the Court concludes that Mr. Floyd has failed to state a claim pursuant to the TLA. Nowhere does Mr. Floyd allege that GMAC failed to disclose terms in the lease agreement at the time the parties entered into the lease for the 2001 Saturn. In fact, Mr. Floyd alleges that the lease agreement in Paragraph 20 states that he had a contractual right to purchase the 2001 vehicle "only at scheduled lease end." (D.I. 7 at 2.) The lease was scheduled to end in August 2004. Mr. Floyd alleges that he returned the leased vehicle to Saturn of Newark on May 27, 2004. On June 2, 2004, Mr. Floyd wrote to GMAC expressing his desire to re-acquire the leased vehicle and to purchase it at the end of the lease period. On June 10, 2004, GMAC notified Mr. Floyd that the leased vehicle had been sold. In his "More Definite Statement," Mr. Floyd claims that by selling the vehicle prior to the scheduled expiration of the lease agreement, GMAC breached its contract with Mr. Floyd. (D.I. 7 at 2.)

In the Court's view, Mr. Floyd's claim with regard to the purchase of the 2001 vehicle is contractual in nature. Mr. Floyd has alleged no facts whereby relief could be granted pursuant to the TLA or Regulation M under any set of facts that could be proved consistent with Mr. Floyd's allegations. Accordingly, the Court will dismiss the TLA claim pursuant to **Federal** Rule of Civil Procedure **12(b)(6** ).

### 2. Equal Credit Opportunity Act

\*6 The Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* ("ECOA"), makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a). To establish a *prima facie* case under ECOA the class members must show that (1) plaintiff was a member of a protected class; (2) plaintiff applied for credit from defendants; (3) plaintiff was qualified for the credit; and (4) despite qualification, plaintiff was denied credit. *See Chiang v. Veneman,* 385 F.3d 256, 259 (3d Cir.2004) (citations omitted).

It is not clear from Mr. Floyd's pleadings whether he is alleging an ECOA violation with regard to the lease agreement with GMAC that he executed in 2001, his attempt to purchase the 2001 vehicle from GMAC in 2004, or the loan transactions with Sun Trust Bank associated with the automobile purchases from Saturn of Newark in 2004. Therefore, the Court will analyze all three transactions.

With regard to the lease agreement that Mr. Floyd entered into with GMAC in 2001, the Court concludes that Mr. Floyd's claim is time barred. Affirmative claims under the ECOA are subject to a two year statute of limitations. *See* 15 U.S.C. § 1691e(f). Mr. Floyd signed the lease agreement with GMAC in May 2001. Mr. Floyd filed his Complaint more than three years later, on August 16, 2004. Thus, the Court concludes that Mr. Floyd's ECOA claim with regard to the 2001 GMAC credit transaction is time barred.

With regard to the 2004 credit transactions with Sun Trust bank, the Court concludes that no relief could be granted pursuant to the ECOA under any set of facts that could be proved consistent with Mr. Floyd's allegations. Mr. Floyd does not allege that Sun Trust bank or Saturn of Newark denied him credit. To the contrary, Mr. Floyd alleges that Sun Trust financed the gold 2004 vehicle he purchased on May 27, 2004 and gave him a second loan for the red 2004 vehicle he purchased on June 14, 2004. The only mention of denial of credit in the pleadings is in reference to non-party automobile dealers that denied Mr. Floyd credit due to the presence on his credit report of the first Sun Trust loan. (D.I. 7 at 3.) Further, Sun Trust bank is not a party to this lawsuit. Thus, the Court concludes that no relief could be granted pursuant to the ECOA with regard to the 2004 financing transactions.

With regard to Mr. Floyd's attempt to purchase the 2001 leased vehicle from GMAC in 2004, the Court concludes that the ECOA is inapplicable. Mr. Floyd does not allege that he applied for any credit in 2004 with regard to the purchase of the 2001 vehicle or that he was denied credit based on his membership in a protected class. Rather, Mr. Floyd alleges that GMAC breached its 2001 contract with

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 1657119 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

him by selling the leased vehicle prior to the expiration of the lease agreement. Thus, the Court concludes that no relief could be granted pursuant to the ECOA with regard to Mr. Floyd's dealings with GMAC in 2004.

## CONCLUSION

**\*7** Because the Court concludes that it lacks subject matter jurisdiction to hear this lawsuit,[FN1] the Renewed Motion To Dismiss (D.I.8) filed by Defendant General Motors Acceptance Corporations will be granted and this lawsuit will be dismissed pursuant to **Federal** Rule of Civil Procedure **12(b)(1)**.

> FN1. Because the Court concludes that it lacks subject matter jurisdiction, the Court will not address GMAC's arguments with regard to the common law fraud claim.

An appropriate Order will be entered.

### *ORDER*

At Wilmington this *11* day of July 2005, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that the Renewed Motion To Dismiss (D.I.8) filed by Defendant General Motors Acceptance Corporation is *GRANTED.*

D.Del.,2005.
Floyd v. Saturn of Newark
Not Reported in F.Supp.2d, 2005 WL 1657119 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Michael R. Robinson, hereby certify that on this 27th day of April, 2007, I caused to be electronically filed a true and correct copy of the foregoing *Motion to Dismiss, Opening Brief in Support Thereof, and (Proposed) Order* with the Clerk of Court using CM/ECF which will send notification of such filing. A copy of the document was served on the following persons by U.S. Mail:

Richard Snyder
23 Harbor Road
Rehoboth Beach, DE 19971

Richard Snyder
P.O. Box 374
Davidsonville, MD 21035

Jeffrey M. Weiner, Esq.
1332 N. King Street
Wilmington, DE 19801

John H. Newcomer, Jr., Esq.
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801

SERGOVIC & ELLIS, P.A.
9 North Front Street
P.O. Box 875
Wilmington, DE 19947


Michael R. Robinson (Del. Bar No. 4452)
**SAUL EWING LLP**
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899-1266
Telephone:    (302) 421-6800
Email:         mrobinson@saul.com